[Cite as *State v. Delvallie*, 2022-Ohio-470.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                              :

    Plaintiff-Appellee,              :

                                        No. 109315

    v.                               :

BRADLEY DELVALLIE,                          :

    Defendant-Appellant.             :

---

JOURNAL ENTRY AND DECISION EN BANC

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** February 17, 2022

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-19-645262-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Catherine M. Coleman and Daniel T. Van, Assistant Prosecuting Attorneys, *for appellee.*

Cullen Sweeney, Cuyahoga County Public Defender, and Paul A. Kuzmins, Assistant Public Defender, *for appellant.*

SEAN C. GALLAGHER, A.J.:

{¶ 1} The Reagan Tokes Law (enacted through S.B. 201) represents the Ohio legislature's first major departure from the so-called "truth in sentencing law," enacted through S.B. 2 in 1996. It embodies a policy determination by the Ohio

legislature that definite terms under S.B. 2 failed for serious felony offenders.  The rape and murder of 21-year-old Reagan Tokes by an offender who had served his definite sentence, despite perpetual misconduct during his term of imprisonment and during his postrelease control, brought the legislature to the nearly unanimous, bipartisan conclusion that definite sentences for serious offenders who displayed no rehabilitative qualities during their incarceration created an unsafe condition for an unsuspecting public.  *Senate Bill 201 Votes Results,* available at https://web.archive.org/web/20211117125521/https://www.legislature.ohio.gov/legislation/legislation-votes?id=GA132-SB-201 (last visited Jan. 22, 2022) (both houses of the legislature voted in favor of enacting S.B. 201 in its final form with a single dissenting vote).

{¶ 2} The law reverts Ohio to an indefinite sentencing scheme for the most serious offenses under Ohio's criminal law — a sentencing structure that has been in place for well over a century.  *See State ex rel. Atty. Gen. v. Peters*, 43 Ohio St. 629, 4 N.E. 81 (1885), syllabus.  The formulas to impose indefinite sentences under the Reagan Tokes Law can be described as complicated and confusing, but that does not render them unconstitutional.  In the clamor surrounding the Reagan Tokes Law's enactment and the difficulties in deciphering some of its provisions, we have seen judges with the stroke of a pen declare the entire 435-page law unconstitutional based on the language in, or perceived omissions from, R.C. 2967.271(C) and (D).

The Reagan Tokes Law under R.C. 2901.011,[1] however, is a statutorily defined term of art that includes 54 statutory sections, including an amendment of 50 existing statutory sections and the adoption of four new statutes. *Id.* Fifty-three of the statutory sections have been deemed unenforceable with no analysis discussing how those provisions violate constitutional safeguards or the impact the supposed offending provisions from R.C. 2967.271 have on the remaining statutory sections known as the Reagan Tokes Law. *State v. Sealey*, 8th Dist. Cuyahoga No. 109670, 2021-Ohio-1949, ¶ 45; *State v. Daniel*, 8th Dist. Cuyahoga No. 109583, 2021-Ohio-1963, ¶ 44; *State v. Delvallie*, 8th Dist. Cuyahoga No. 109315, 2021-Ohio-1809, ¶ 32 (the "Reagan Tokes Law" is unconstitutional because R.C. 2967.271 infringes on the defendant's right to a jury under the Sixth Amendment).

{¶ 3} In *Sealey*, in an appeal filed by the state, the panel declared subsections (C) and (D) of R.C. 2967.271 unconstitutional. While it may have been the panel's intent to only find subsections (C) and (D) of R.C. 2967.271 unconstitutional, the net effect of the panel's ruling affirmed the trial court's holding that the "Reagan Tokes Law" is unconstitutional in its entirety. *Id.* at ¶ 45 ("the trial court's finding the Reagan Tokes Law unconstitutional is affirmed"); *see also Daniel* (after declaring subsections (C) and (D) of R.C. 2967.271 unconstitutional, the panel concluded without additional analysis that "the *Reagan Tokes Law* does not satisfy the

---

[1] Although R.C. 2901.011 delineates the 54 statutory sections comprising the Reagan Tokes Law, S.B. 201 resulted in the amendment to 57 statutory sections, in addition to the creation of five new sections. Any references throughout to the Reagan Tokes Law in this opinion are limited to the statutory definition as provided under R.C. 2901.011.

requirements of due process and, as such, violates [the defendant's] constitutional rights" (Emphasis added.)); *but see State v. Wilburn*, 8th Dist. Cuyahoga No. 109507, 2021-Ohio-578, ¶ 18; *State v. Gamble*, 8th Dist. Cuyahoga No. 109613, 2021-Ohio-1810, ¶ 6 (overruling the defendant's assignment of error in which it was claimed that the Reagan Tokes Law was unconstitutional). In other words, *Sealey* affirmed the trial court's decision declaring the Reagan Tokes Law to be unconstitutional based on the panel's conclusion that aspects of R.C. 2967.271 were deemed unconstitutional — the effect of which rendered the whole of the law unenforceable because of the constitutional analysis limited to one provision. *But see State ex rel. Sunset Estate Properties, L.L.C. v. Lodi*, 142 Ohio St.3d 351, 2015-Ohio-790, 30 N.E.3d 934, ¶ 16 (R.C. 1.50 creates a presumption of severability such that the constitutional infirmity of one statute does not impact the validity of the entire law).

{¶ 4} Pursuant to App.R. 26, Loc.App.R. 26, and *McFadden v. Cleveland State Univ.*, 120 Ohio St.3d 54, 2008-Ohio-4914, 896 N.E.2d 672, this court sua sponte determined that the panel decision in *Delvallie*, 8th Dist. Cuyahoga No. 109315, 2021-Ohio-1809, conflicts with the following opinions: *Gamble*, 8th Dist. Cuyahoga No. 109613, 2021-Ohio-1810; *State v. Simmons*, 8th Dist. Cuyahoga No. 109476, 2021-Ohio-939; and *Wilburn*, 8th Dist. Cuyahoga No. 109507, 2021-Ohio-578. We must, therefore, resolve the constitutional validity of R.C. 2967.271 and the Reagan Tokes Law in general.

**I.    Putting the background of the Reagan Tokes Law into perspective**

**{¶ 5}** At the outset, it is important to examine the apparent legislative intent behind the law and its effect on Ohio's criminal justice scheme in light of the conflicting conclusions reached in *Delvallie, Sealey,* and *Daniel.*[2]

**{¶ 6}** The Reagan Tokes Law offers the chance for Ohio to return to an incentive-based, rehabilitative prison process for serious offenders. *See, e.g.,* Siegel, *Reagan Tokes Act seeks to undo years of definitive sentencing in Ohio*, The Columbus Dispatch (Oct. 25, 2017) (quoting State Senator Kevin Bacon describing the intent behind passing the Reagan Tokes Law), available at https://web.archive.org/web/20210818163121/https://www.timesreporter.com/news/20171025/reagan-tokes-act-seeks-to-undo-years-of-definitive-sentencing-in-ohio (last visited Jan. 22, 2022).[3]  That process can incentivize socially acceptable conduct by offering inmates a tangible way to reduce their overall sentences through buying into the social contract — a tacit agreement to live together in accordance to the socially established rules of behavior.  *See id.*  The Reagan Tokes Law offers inmates the opportunity to demonstrate their willingness to reform and in the process to receive lesser sentences based on their behavior, instead of serving

---

[2] The conflicts created by *Sealey* and *Daniel* will be resolved in each respective case based on the outcome herein.

[3] Since *Delvallie* relies on the blanket assertion that "the public media is replete with reports of attacks by inmates against inmates, inmates against corrections officers, and corrections officers against inmates" in declaring the Reagan Tokes Law unconstitutional, it only seems fair to review the legislature's public commentary to understand the history of the law.  *Delvallie* at ¶ 68.

definite terms. *Reagan Tokes case spurs Ohio legislation to change incarceration guidelines*, TrueCrimeDaily.com (May 14, 2018) ("'The data and evidence has found that the indefinite sentencing worked to actually help rehabilitate these offenders because they are more incentivized to participate in programming and to not face longer prison terms,' said Ohio State Rep. Kristin Boggs."), available at https://web.archive.org/web/20210818164113/https://truecrimedaily.com/2018/05/14/reagan-tokes-case-spurs-ohio-legislation-to-change-incarceration-guidelines/ (last visited Jan. 22, 2022). These changes provide the inmate the opportunity to reduce the overall prison term below what would be served under the pre-S.B. 201 definite sentencing structure. *Id.* Under the pre-S.B. 201 definite sentencing law, Ohio focused on the punitive nature of the imprisonment system. The Reagan Tokes Law offers an albeit small, but beginning, step away from that draconian approach.

{¶ 7} Back in 1974 when Ohio revamped the Revised Code, there were no definite sentences. First-degree felony offenses were imposed using a range — a minimum of 4, 5, 6, or 7 years to a maximum of 25 years. https://www.supremecourt.ohio.gov/Boards/Sentencing/Materials/2017/May/felonyRangeSB2.pdf. Second-degree felony offenses had a minimum of 2, 3, 4, or 5 to the maximum of 15 years. *Id.* Third-degree felony offenses had a range of 1, 1-1/2, 2, or 3 years to 10 years, and fourth-degree felony offenses had a range of 1/2, 1, 1-1/2 years, or 2 years up to 5 years. *Id., see also* H.B. 511. Every inmate was given an indefinite range with a parole eligibility date. Inmates ages 18-25 were given

what was termed as "reformatory" time, while adults over 25 were given "penitentiary" time. For example, a reformatory inmate serving an indefinite 5-year sentence would become parole eligible after serving 1 year and 10 months. A penitentiary inmate with the same 5-year indefinite sentence would be eligible after serving 2 full years.

{¶ 8} Definite sentences did not exist in Ohio until S.B. 199, effective July 1, 1983. That enactment created two nonmandatory determinate prison sentence ranges for low-level nonviolent felons, and a three-year mandatory sentence for using or possessing a gun while committing a felony. The overall result was eight new sentencing ranges added to the original four ranges from the 1974 criminal code.

{¶ 9} Assessing and crediting behavior in prison was very much a part of both H.B. 511 and S.B. 199 and the parole process in general. Inmates doing reformatory time could get up to 12 days per month, prorated for each month, if they obeyed the rules of the institution. Good time likewise reduced the time for penitentiary inmates by up to 8 days per month, prorated for each month, if they obeyed the rules of the institution.

{¶ 10} The so-called truth-in-sentencing scheme known as S.B. 2, became effective July 1, 1996. S.B. 2 brought definite sentencing to Ohio for the vast majority of crimes and ended parole eligibility for those inmates sentenced to definite terms. Many of the behavioral incentives previously in place affecting the parole determinations were also lost. In essence, definite sentencing transformed what had

been a rehabilitative focus underlying prison terms into a purely punitive system.  It is not a coincidence that the prison population exploded under the weight of the definite sentencing structure.  It also turned out to be one of the costliest pieces of legislation in Ohio history.

{¶ 11} The litigation it spawned went on for decades and often resulted in the unending process of transporting inmates back and forth for resentencing hearings, largely for judges to make perfunctory findings or to utter magic words.  Burt W. Griffin and Lewis R. Katz, *Sentencing Consistency: Basic Principles Instead Of Numerical Grids: The Ohio Plan*, 53 Case W.Res.L.Rev. 1, 30-31, 32 (2002) (explaining the necessary conclusions needed under the then newly enacted definite sentencing scheme leading to appellate reversals of sentences).  The results of S.B. 2 were in the details.  Ohio's prison population topped 50,000 for the first time around 2008.  Amber G. Damiani,[4] *Nix The "Fix": An Analysis On Ohio's Criminal Sentencing Law And Its Effect On Prison Population*, 47 Cap.U.L.Rev. 755, 755 (2019).  Many inmates serving these definite terms were subjected to consecutive sentences with no option for parole, resulting in what amounted to de facto life terms.  *See State v. Gwynne*, 5th Dist. Delaware No. 16 CAA12 0056, 2021-Ohio-2378.  There has been a slow recognition that the felony sentencing scheme under S.B. 2 has become not only more complex, but also more costly — driving up the prison population with no mechanisms to assess inmates' reformative conduct.

---

[4] The author earned a law degree from Capital University Law School in 2019.

Siegel, *Reagan Tokes Act seeks to undo years of definitive sentencing in Ohio*, *supra* ("For some offenders, there is no incentive to help yourself or not commit acts against other prisoners[.]"). One solution was to increase the Ohio Department of Rehabilitation and Correction's ("ODRC") and its Adult Parole Authority's participation in the prison process by increasing the use of indefinite sentencing and the ability of ODRC to be involved in release options. *Nix the "Fix"* at 785-786.

{¶ 12} The Reagan Tokes Law appears to be an effort to return Ohio to its core sentencing approach, implementing the reformative incentive for offenders that was lost to the definite sentencing structure. Griffin and Katz, *Sentencing Consistency: Basic Principles Instead Of Numerical Grids: The Ohio Plan*, 53 Case W.Res.L.Rev. 1, 38 (explaining the history Ohio's implementation of rehabilitative sentencing through indefinite sentencing and good time reductions dating back to 1869 and 1856). The law, for example, includes a provision for "earned reduction of minimum prison term" ("ERMPT") of between 5 percent and 15 percent off the minimum term — a sentencing reduction not afforded to nonqualifying felony offenders. R.C. 2967.271(F)(1)(b). The law identifies "exceptional conduct or adjustment to incarceration" as the basis for awarding the reduction under R.C. 2967.271(F)(7). In addition, the new law empowers inmates with a presumption of release at the end of their minimum term, something unparalleled in Ohio history with respect to indefinite sentences and parole eligibility. Inmates never had a presumption of release in any other legislative enactment of indefinite prison terms.

The presumption before the Reagan Tokes Law was always in favor of serving the full term.

{¶ 13} Despite the legislature's incentive-laden approach to criminal justice, there has been a broad push by opponents of the law to summarily declare the whole of the Reagan Tokes Law unconstitutional while focusing only on aspects of R.C. 2967.271(B)-(F), which permit the executive branch to "maintain" the indefinite portion of the sentence for offenders that flout prison rules and regulations.

{¶ 14} The defendants' rush to eliminate the entirety of the legislature's departure from a purely punitive prison policy overlooks the reductions afforded under the new law, and it might shock those offenders who learn that their sentences could have been reduced under R.C. 2967.271(F) to discover that their opportunity for a shorter prison term could be declared unconstitutional or unenforceable by these appeals. Rather than broadly attacking the new law, one would have thought there would be a greater call for more incentive-based sentence reductions for inmates like those that are available under this law.

{¶ 15} While it is true some inmates could serve longer terms under the Reagan Tokes Law based on the nature of the indefinite prison sentence structure, those longer terms are determined by the conduct of the inmate. That policy determination is purely within the legislature's role under the tripartite system of government. Permitting the executive agency to review an inmate's prison conduct is a process deeply rooted within the Ohio Revised Code. *See, e.g.*, R.C. 2967.193(A); R.C. 2967.13. This idea is also nothing new. It is important to recognize that the

indefinite prison sentence with the executive branch's review has been a mainstay of Ohio law since time immemorial, and it does not appear that any argument as to the constitutional validity of the Reagan Tokes Law challenges R.C. 2929.144 or the imposition of the indefinite term. Instead, the primary focus is on R.C. 2967.271(C) and (D), which incidentally are modeled on existing Ohio law and rely on the currently enacted prison rule infraction system. *See* R.C. 2967.15; Ohio Adm.Code 5120-9-08.

{¶ 16} As with all appeals, we must begin with the arguments as presented.

**II.    Defendants bear the burden to demonstrate the law is unconstitutional**

{¶ 17} We find that the Reagan Tokes Law, as defined under R.C. 2901.011, is not unconstitutional based on the arguments presented, reaffirming the principles established in *Gamble*, 8th Dist. Cuyahoga No. 109613, 2021-Ohio-1810, *Simmons*, 8th Dist. Cuyahoga No. 109476, 2021-Ohio-939, and *Wilburn*, 8th Dist. Cuyahoga No. 109507, 2021-Ohio-578. The decisions reached to the contrary in *Delvallie, Sealey,* and *Daniel*, are therefore vacated for the following reasons.

{¶ 18} In order to succeed in a constitutional challenge, a defendant must demonstrate that the law is unconstitutional beyond a reasonable doubt. *State v. Bloomer*, 122 Ohio St.3d 200, 2009-Ohio-2462, 909 N.E.2d 1254, ¶ 41, citing *State v. Ferguson*, 120 Ohio St.3d 7, 2008-Ohio-4824, 896 N.E.2d 110, ¶ 12. When addressing constitutional challenges, courts must remain mindful that all statutes have a strong presumption of constitutionality. *Arbino v. Johnson & Johnson*, 116

Ohio St.3d 468, 2007-Ohio-6948, 880 N.E.2d 420, ¶ 25; *Sorrell v. Thevenir*, 69 Ohio St.3d 415, 419, 633 N.E.2d 504 (1994), citing *State ex rel. Dickman v. Defenbacher*, 164 Ohio St. 142, 128 N.E.2d 59 (1955), paragraph one of the syllabus; *Jones v. MetroHealth Med. Ctr.*, 2017-Ohio-7329, 89 N.E.3d 633, ¶ 63 (8th Dist.).

{¶ 19} Courts in Ohio do not share the responsibility of establishing "legislative policies or [second-guessing] the General Assembly's policy choices. '[T]he General Assembly is responsible for weighing [policy] concerns and making policy decisions; [courts] are charged with evaluating the constitutionality of their choices.'" *Stetter v. R.J. Corman Derailment Servs.*, *L.L.C.,* 125 Ohio St.3d 280, 2010-Ohio-1029, 927 N.E.2d 1092, ¶ 35, quoting *Groch v. Gen. Motors Corp.*, 117 Ohio St.3d 192, 2008-Ohio-546, 883 N.E.2d 377, ¶ 212, and *Arbino* at ¶ 113. For this reason, the standard to declare a statute unconstitutional is high:

> A party may challenge a statute as unconstitutional on its face or as applied to a particular set of facts. A facial challenge to a statute is the most difficult to bring successfully because the challenger must establish that there exists no set of circumstances under which the statute would be valid. *The fact that a statute might operate unconstitutionally under some plausible set of circumstances is insufficient to render it wholly invalid.*

(Emphasis added.) *Harrold v. Collier*, 107 Ohio St.3d 44, 2005-Ohio-5334, 836 N.E.2d 1165, ¶ 37, citing *Belden v. Union Cent. Life Ins. Co.*, 143 Ohio St. 329, 55 N.E.2d 629 (1944), paragraph four of the syllabus, and *United States v. Salerno*, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987); s*ee also, e.g., State v. Beard*, 2021-Ohio-2512, 177 N.E.3d 591, ¶ 29 (8th Dist.) (defendant failed to demonstrate beyond a reasonable doubt that the statutory provision was unconstitutional).

{¶ 20} Defendants challenging the Reagan Tokes Law generally advance three claims in support of the due process violation argument, citing the Fourteenth Amendment to the United States Constitution and Article I, Section 16, of the Ohio Constitution: (1) that the Reagan Tokes Law violates the right to trial by jury or (2) that the Reagan Tokes Law violates the separation-of-powers doctrine and (3) that R.C. 2967.271(C) and (D), which provide offenders with the right to a hearing before imposition of the maximum term imposed under R.C. 2929.144, fail to provide the full panoply of constitutional pretrial rights in violation of their due process rights. The cases giving rise to our en banc review are no different, offering at least some derivation of those arguments, if not a verbatim recitation.

{¶ 21} Importantly, however, no one has demonstrated that the imposition of an indefinite term under R.C. 2929.144 and 2929.14 itself violates any constitutional provision or that the legislature's lack of procedural guidance within R.C. 2967.271(C) and (D) is integral to the whole of the Reagan Tokes Law. *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, ¶ 99 (severance of the offending provision is a necessary consideration before declaring the entire statutory section unconstitutional). Thus, our starting point should be to presume that the indefinite term as imposed by the trial court, if not the 53 remaining statutory sections under R.C. 2901.011, are constitutionally sound. *State ex rel. Sunset Estate Properties,* 142 Ohio St.3d 351, 2015-Ohio-790, 30 N.E.3d 934, at ¶ 6 (R.C. 1.50 creates a presumption of severability).

{¶ 22} Our review of the constitutional validity of the Reagan Tokes Law is not limited to just the general impressions. We cannot look to the vague assertions that the "Reagan Tokes Law is unconstitutional" in its entirety as it interweaves itself throughout the Revised Code and administrative process. Declaring the Reagan Tokes Law unconstitutional or unenforceable invalidates all 54 statutory sections listed under R.C. 2901.011. Since we must presume the constitutional validity of statutes, we must begin with the defendants' challenges meant to rebut the presumption.

### a. The defendants' general presumption regarding ODRC's role in the sentencing structure is fundamentally flawed

{¶ 23} There is an overarching issue that appears to permeate every aspect of the constitutional challenge against the statutory sections codified as part of the Reagan Tokes Law. The defendants' claims depend solely on the belief that ODRC "extends" or "imposes" a prison term under R.C. 2967.271(C) and (D) beyond the maximum sentence imposed by the sentencing court. *See, e.g., Delvallie*, 8th Dist. Cuyahoga No. 109315, 2021-Ohio-1809, at ¶ 54. To the contrary, R.C. 2929.144(B) provides that the sentencing court must determine the maximum term of imprisonment based on a mathematical formula as applied to the minimum term of imprisonment imposed under R.C. 2929.14(A)(1)(a) and (A)(2)(a). The sentencing court must then impose that maximum sentence as part of the final conviction under the unambiguous language of R.C. 2929.144(C) ("The court imposing a prison term on an offender [under R.C. 2929.14(A)] for a qualifying felony of the first or second

degree shall sentence the offender, as part of the sentence, to the maximum prison term determined under division (B) of this section" and impose both the minimum and maximum terms in the final entry of conviction.).

{¶ 24} Under R.C. 2967.271(D)(1), if ODRC rebuts the presumption of release following the minimum term, by considering the inmate's institutional record at a hearing, "the department may *maintain* the offender's incarceration in a state correctional institution under the sentence after the expiration of the offender's minimum prison term * * *." (Emphasis added.) *Id.* "'Maintain' is defined as 'to continue in possession of.'" *Griffith v. Aultman Hosp.*, 146 Ohio St.3d 196, 2016-Ohio-1138, 54 N.E.3d 1196, ¶ 22, quoting *Black's Law Dictionary* 1097 (10th Ed.2014). "Maintain" can also be defined as

> "1 : to keep in a state of repair, efficiency, or validity : preserve from failure or decline * * * 2 a : to sustain against opposition or danger : back up : DEFEND, UPHOLD * * * b : to uphold in argument : contend for * * * 3 : to persevere in : carry on : keep up : CONTINUE * * * 4 : to provide for : bear the expense of : SUPPORT * * * 5 : to affirm in or as if in argument : ASSERT, DECLARE * * * 6 : to assist (a party to legal action) so as to commit maintenance."

*Ginn v. Stonecreek Dental Care*, 12th Dist. Fayette Nos. CA2018-09-018, CA2018-09-019, and CA2018-11-022, 2019-Ohio-3229, ¶ 54, quoting *Webster's Third New International Dictionary* 1362 (1993). In short, no definition of "maintain" includes the concept of "imposing" or "extending" a sentence. Thus, the defendants' beliefs as to the structure of the maximum sentence are contrary to the plain language of R.C. 2929.144 and 2967.271(D). ODRC does not "extend" or "impose" a sentence, much less one that exceeds or extends the maximum term imposed by the trial court.

ODRC simply "maintains" or continues the incarceration of the inmate under the term of imprisonment imposed by the trial court. This is not meaningfully distinct from Ohio's current parole system, in which offenders may be kept in prison following service of the minimum term for parole eligibility.

{¶ 25} Under the sentencing structure codified in R.C. 2929.144 and 2929.14, the trial court imposes the minimum and maximum terms of imprisonment. ODRC, as an agency under the executive branch of government, simply enforces the judicially imposed sentence and has been delegated the responsibility over the release determinations under R.C. 2967.271(C)-(F). This is similar, if not identical, to the executive branch's authority to release offenders from sentences under Ohio's parole system for indefinite life sentences. R.C. 2967.12; 2967.16. The question, therefore, is not whether there is a perception that the maximum-term hearing infringes on a defendant's constitutional rights, but whether the sentencing law as enacted does.

{¶ 26} The Reagan Tokes Law provisions under R.C. 2929.144 and 2967.271, as previously discussed, mirror those from R.C. 2929.02 and 2967.12 through 2967.16. Both create a system of releasing offenders serving indefinite terms of imprisonment. The Reagan Tokes Law, unlike the indefinite life sentencing structure under R.C. 2967.16 (final release from indefinite sentence statutory section, which requires the executive agency to determine the release on parole and then the final release from the prison sentence imposed by the trial court in separate stages), creates a presumption of a final release after the minimum term, subject to

any applicable term of postrelease control. R.C. 2967.271(B). Under the indefinite life sentencing structure, ODRC makes the final determination of an inmate's final release from prison. R.C. 2967.16. The Reagan Tokes Law removes that discretion and creates a presumption favoring release from the final sentence at the completion of the minimum term. R.C. 2967.271(B). That distinction does not alter the core sentencing approach of tasking ODRC with reviewing an inmate's prison status while the inmate is serving a judicially imposed prison sentence or tasking ODRC with authority over maintaining a prisoner within the indefinite sentence.

{¶ 27} Therefore, the defendants' request for us to declare the Reagan Tokes Law unconstitutional in its entirety, including the indefinite sentencing scheme codified under R.C. 2967.271, 2929.144, and 2929.14(A)(1)-(2), necessarily presents constitutional implications for indefinite life sentences under Ohio law that cannot be ignored. The executive branch makes parole decisions affecting the judicially imposed sentences under Ohio sentencing law in general. In light of the legislature's use of the similar procedures as applied to both indefinite life and nonlife sentences, declaring the Reagan Tokes Law unconstitutional poses ramifications far beyond S.B. 201.

{¶ 28} The legislature has the sole authority to define crimes and establish the punishment in Ohio. *State v. Bates*, 118 Ohio St.3d 174, 2008-Ohio-1983, 887 N.E.2d 328, ¶ 13, quoting *Stewart v. Maxwell*, 174 Ohio St. 180, 181, 187 N.E.2d 888 (1963); *State v. Harper*, 160 Ohio St.3d 480, 2020-Ohio-2913, 159 N.E.3d 248, ¶ 2. If the legislature returns Ohio to indefinite sentencing for certain felony offenses, or

even increases sentencing ranges, that is well within its legislative prerogative. Only the Ohio electorate can decide the General Assembly's fate for such a policy decision. The General Assembly has determined that for any qualifying offense, as defined under R.C. 2929.144(A), the trial court must impose both a minimum and a maximum term of imprisonment. R.C. 2929.144(C); 2929.14(A)(1)(a) and (A)(2)(a). Under R.C. 2967.271(D), ODRC is required to enforce or maintain that imposed sentence through the legislative delegation of authority — a principle that represents the bedrock of the Ohio criminal justice system and is analogous to Ohio's current parole revocation system that is entirely managed by ODRC.

{¶ 29} With this background in mind, we can focus on the defendants' three arguments in support of their claims that the Reagan Tokes Law is unconstitutional in its entirety.

### b. Defendants' claims that the indefinite, nonlife sentences are analogous to the now-defunct "bad time" law are misplaced

{¶ 30} "A fundamental principle of the constitutional separation of powers among the three branches of government is that the legislative branch is 'the ultimate arbiter of public policy.'" *State v. Blankenship*, 145 Ohio St.3d 221, 2015-Ohio-4624, 48 N.E.3d 516, ¶ 37, citing *Arbino*, 116 Ohio St.3d 468, 2007-Ohio-6948, 880 N.E.2d 420, at ¶ 21; *State ex rel. Cincinnati Enquirer, Div. of Gannett Satellite Information Network v. Dupuis*, 98 Ohio St.3d 126, 2002-Ohio-7041, 781 N.E.2d 163, ¶ 21. It is the legislature, not the judiciary, that possesses "the power to continually create and refine the laws to meet the needs of the citizens of Ohio."

*Arbino* at ¶ 21. "All statutes have a strong presumption of constitutionality." *Id.* at ¶ 25. In order to find that a statute is unconstitutional, courts must determine "'beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible.'" *Id.*, quoting *State ex rel. Dickman*, 164 Ohio St. 142, 128 N.E.2d 59, at paragraph one of the syllabus. Further, all doubts regarding the constitutionality of any given statute are resolved in favor of the statute. *State v. Mason*, 153 Ohio St.3d 476, 2018-Ohio-1462, 108 N.E.3d 56, ¶ 5, quoting *State v. Gill*, 63 Ohio St.3d 53, 55, 584 N.E.2d 1200 (1992).

{¶ 31} Under the Reagan Tokes Law, the trial court sentences the offender to the minimum and maximum term, and that sentence must be included in the final entry of conviction. R.C. 2929.14; 2929.144. Thus, it is the judicial branch that imposes the statutorily required sentence and the only sentencing discretion provided to the trial court lies with the length of the minimum term under R.C. 2929.14(A)(1)(a) and (A)(2)(a). Neither the trial court nor ODRC has authority to increase any sentence beyond the maximum term set forth under R.C. 2929.144.

{¶ 32} R.C. 2967.271(B) establishes a presumptive release date at the end of the minimum term, and under subdivision (D), the legislature provides ODRC the framework required to enforce or "maintain" the maximum sentence imposed by the trial court in the final entry of conviction. ODRC may review the offender's prison conduct, which is dependent on the institutional rule infraction system under Ohio law unrelated to the Reagan Tokes Law, and rebut that presumption of release to enforce, or "maintain" the remaining portion of the offender's prison term (the

maximum term) already imposed by the trial court. R.C. 2967.271(D)(1). This is similar to a sentencing court's imposition of an indefinite life sentence that delegates authority to the executive branch to make any and all parole determinations and to release offenders from their judicially imposed sentences after the minimum period is served. R.C. 2967.12; 2967.16. Tellingly, the defendants are unable to demonstrate how ODRC imposes a new sentence by exercising its statutorily mandated power to review an inmate's prison status following the imposition of the maximum term by the sentencing court.

{¶ 33} It is important to remember that the separation-of-powers doctrine, as derived from the federal Constitution, "has no express provision which prohibits the officials of one branch of government from exercising functions of the other branches." *Geraghty v. United States Parole Comm.*, 719 F.2d 1199, 1210 (3d Cir.1983), citing *Springer v. Philippine Islands*, 277 U.S. 189, 201, 48 S.Ct. 480, 72 L.Ed. 845 (1928) (upholding parole determinations by the executive branch). "The Constitution does not require three airtight departments of government." *Id.*, citing *Nixon v. Admr. of Gen. Servs.*, 433 U.S. 425, 443, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977). "Ohio, unlike other jurisdictions, [also lacks] a constitutional provision specifying the concept of separation of powers * * *." *State v. Warner*, 55 Ohio St.3d 31, 43-44, 564 N.E.2d 18 (1990), citing *State v. Harmon*, 31 Ohio St. 250 (1877), and *State, ex rel. Bryant v. Akron Metro. Park Dist.*, 120 Ohio St. 464 (1929). Similar to the federal Constitution, Ohio's separation-of-powers doctrine "is implicitly embedded in the entire framework of those sections of the Ohio Constitution that

define the substance and scope of powers granted to the three branches of state government." *Id.* There is no explicit rule prohibiting the delegation of authority as between the coequal branches of government. *Id.*

{¶ 34} The defendants' argument with respect to the separation of powers analogizes the Reagan Tokes Law's indefinite, nonlife sentencing scheme to Ohio's "bad time" law under former R.C. 2967.11, which provided the executive branch the power to keep a prisoner in jail beyond the sentence imposed by the trial court. *State ex rel. Bray v. Russell*, 89 Ohio St.3d 132, 729 N.E.2d 359 (2000). In Bray's situation, the trial court sentenced him to serve eight months in prison in the final entry of conviction. *Id.* at 133. During Bray's incarceration, he assaulted a prison guard and the Ohio Parole Board imposed an additional 90-day term to be served following the conclusion of the judicially imposed, eight-month sentence. *Id.* It was the additional 90-day term that violated the separation-of-powers doctrine because only the judiciary has the power to impose a sentence. *Id.*

{¶ 35} It has long been understood that "'when the power to sanction is delegated to the executive branch, a separation-of-powers problem is avoided if the sanction is originally imposed by a court and included in its sentence.'" *State v. Ferguson*, 2d Dist. Montgomery No. 28644, 2020-Ohio-4153, ¶ 23; *Hernandez v. Kelly*, 108 Ohio St.3d 395, 2006-Ohio-126, 844 N.E.2d 301, ¶ 18-20; *State v. Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864, ¶ 19; *Woods v. Telb*, 89 Ohio St.3d 504, 512-513, 733 N.E.2d 1103 (2000). Under the sentencing scheme established by the Reagan Tokes Law, the judiciary imposes the sentence that is

enforced by ODRC — in complete compliance with the separation-of-powers doctrine. Again, at the risk of belaboring the point, the defendants are unable to identify any statutory section that permits ODRC to "impose" a sentence beyond that which is imposed by the trial court. *Simmons*, 2021-Ohio-939, 169 N.E.3d 728, at ¶ 13; *Wilburn*, 2021-Ohio-578, 168 N.E.3d 873, at ¶ 26. This is fatal to their cause.

{¶ 36} The defendants' claims blur the distinction between imposing a sentence and executing or, in statutory parlance, "maintaining," the judicially imposed sentence. Understandably, the "bad time" law was deemed to violate the separation-of-powers doctrine because it divested the sentencing court of its authority to impose the final sentence. The executive branch was tasked with imposing a sentence beyond that which was imposed by the trial court. *Simmons, Wilburn.* R.C. 2929.144 shares nothing in common with the "bad time" law at issue in *Bray.* Any application of *Bray* to the indefinite, nonlife felony sentencing scheme is misplaced. Under R.C. 2929.144, the trial court imposes the maximum term in the final entry of conviction such that ODRC is merely tasked with implementation of the imposed sentence. This complies with constitutional mandates. "The determination of guilt in a criminal matter *and the sentencing of a defendant convicted of a crime* are solely the province of the judiciary." (Emphasis added.) *Bray*, at 136, citing *Peters*, 43 Ohio St. at 648, 4 N.E. 81. *Bray* is not relevant to the current discussion.

{¶ 37} The Reagan Tokes Law does not violate any separation-of-powers safeguard because the executive branch has always possessed the authority to

determine parole, parole revocation, or sentencing-release matters under an indefinite sentencing scheme after the trial court imposes the minimum and maximum terms. *See* R.C. 2967.12 and 2967.16 (executive branch authorized to grant final release of the offender following adherence to the terms of parole). R.C. 2929.144, 2929.14(A)(1)(a) and (A)(2)(a), and R.C. 2967.271 do not stray from the sentencing structure already in place under Ohio law.

{¶ 38} Keeping an offender in prison under R.C. 2929.144 past the minimum term is no different than keeping an offender in prison under an indefinite life sentence after the offender becomes eligible for parole. The executive branch's decision releasing an offender from, or maintaining an offender in, an indefinite sentence has been part of the Ohio criminal justice system from time immemorial. *McDougle v. Maxwell*, 1 Ohio St.2d 68, 71, 203 N.E.2d 334 (1964) (discussing the parole board's unilateral authority to release an offender from the maximum indefinite sentence). According to the Ohio Supreme Court, "the granting and revocation of parole are matters traditionally handled by administrative officers." *Woods,* 89 Ohio St.3d at 514, 733 N.E.2d 1103. The indefinite sentencing scheme enacted under the Reagan Tokes Law does not violate the separation-of-powers doctrine under either Ohio or federal law.

### c. Release determinations by the executive branch do not violate the right to a jury trial

{¶ 39} Further, R.C. 2967.271(C) and (D) do not violate the right to a jury trial under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435

(2000), and *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). Neither *Simmons* nor *Wilburn* addressed the defendant's arguments with respect to *Apprendi* and an offender's right to a jury trial, so this court sitting en banc must address that argument since it lies at the heart of the conflict between *Gamble*, 2021-Ohio-1810, 173 N.E.3d 132, at ¶ 41, and *Delvallie*, 2021-Ohio-1809, 173 N.E.3d 544, at ¶ 32.

{¶ 40} The trial court, under R.C. 2929.144 and 2929.14, is statutorily required to impose the minimum and maximum terms upon the offender being found guilty of the qualifying felony offense — similar to an offender being sentenced to life with the possibility of parole under the indefinite life sentencing structure. The trial court lacks discretion to impose any term beyond the maximum under any provision of the Reagan Tokes Law. In *Apprendi*, the Supreme Court held that, in order to sentence a defendant to a term of imprisonment *in excess of the statutory maximum*, the factual circumstances justifying the enhanced sentence must be found by the jury beyond a reasonable doubt. *Id.*; *see also Alleyne v. United States*, 570 U.S. 99, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013). *Alleyne* is similar.

{¶ 41} In *Alleyne*, the Supreme Court concluded that the element of the offense included brandishing a firearm that raised the level of the offense from one subject to a 5-year term to one subject to a 7-year term, and therefore, brandishing a firearm was an element of the offense that must be determined by the trier of fact. *Id.* at 114. That conclusion is simply irrelevant to the Reagan Tokes Law. No provision under the Reagan Tokes Law authorizes a sentencing court, or ODRC for

that matter, to impose a sentence beyond the maximum set forth in the sentencing statutes or to elevate the minimum term beyond the ranges set forth in R.C. 2929.14(A)(1)(a) and (A)(2)(a). R.C. 2929.144 and 2929.14(A)(1)(a)-(A)(2)(a) provide no discretion to the trial court in imposing the maximum term based on the offender having pleaded or been found guilty of the underlying qualifying felony offense. The only discretion lies with the imposition of the minimum term, which is no different than the discretion to sentence within the definite sentencing range for nonqualifying felony offenses.

{¶ 42} In declaring R.C. 2967.271(C) and (D) to be unconstitutional, the defendants heavily rely on *Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, which is ironic in light of the lack of discussion of the severance doctrine at the heart of the *Foster* decision. In *Foster*, it was concluded that Ohio's sentencing structure of permitting the trial court to impose a consecutive sentence resulting in a term of imprisonment beyond the minimum based on the issuance of findings violated *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). *Foster* was superseded by *Oregon v. Ice*, 555 U.S. 160, 129 S.Ct. 711, 172 L.Ed.2d 517 (2009), as recognized in *State v. Sergent*, 148 Ohio St.3d 94, 2016-Ohio-2696, 69 N.E.3d 627, ¶ 35. In *Ice*, the Supreme Court concluded that a state court's discretion to impose consecutive sentences did not violate the right to a jury trial under the Sixth Amendment because throughout history the jury played no role in that sentencing decision. *Ice* at 167-168. The sole limitation was that a trial court cannot impose a sentence "beyond the prescribed statutory maximum" based on

consideration and determination of facts not considered by the jury. *Id.* at 167. "Instead, specification of the regime for administering multiple sentences has long been considered the prerogative of state legislatures[,]" even those prerogatives that in effect lengthen the offender's sentence. *Id.* at 168. The rationale underlying *Foster's* decision to declare the finding requirement for consecutive sentencing to be unconstitutional, which was based on the notion that the consecutive sentence increased the offender's minimum prison time, did not stand the test of time.

{¶ 43} Any reliance on *Foster* seems to focus on the claim that any consideration of facts not determined by the trier of fact violates *Apprendi* per se. There is no basis for that conclusion under Ohio or federal law. In fact, Ohio's sentencing structure in general depends on judicial consideration of facts beyond that which is considered by the trier of fact. R.C. 2929.11; 2929.12; 2929.14 (providing for a sentencing range upon nonqualifying felony offenses). Under the defendants' broadly stated rationale, therefore, Ohio would be returned to the pre-*Oregon v. Ice* days in which any and all sentencing considerations violate the offender's constitutional rights, and such a conclusion would necessarily impact Ohio's complete sentencing structure that relies on judicial determinations to sentence within ranges.

{¶ 44} Again, the trial court must impose a minimum and a maximum indefinite term under R.C. 2929.14 and 2929.144. The only discretion lies with the length of the minimum term, and therefore, the trial court is not imposing a sentence "in excess of the maximum" term as expressly prohibited under *Apprendi*.

And the trial court is also not imposing a sentence beyond the minimum term prescribed by statute based on any findings of facts. Any discussion of sentencing discretion to impose a term that exceeds the minimum term can only be based on the overturned rationale espoused in *Foster*. Accordingly, that argument is misplaced.

{¶ 45} Neither R.C. 2929.144 nor 2929.14(A)(1)(a) and (A)(2)(a) run afoul of *Apprendi* or its progeny. Despite this, it has been suggested that the plurality decision in *United States v. Haymond*, 588 U.S.____, 139 S.Ct. 2369, 2373, 204 L.Ed.2d 897 (2019), supports application of *Apprendi* to R.C. 2967.271(C) and (D). In *Haymond*, however, the defendant was convicted of possessing child pornography, for which the district judge imposed an indefinite prison term of zero to 10 years under 18 U.S.C. 2252(b)(2) and a period of supervised release of between 5 years and life under 18 U.S.C. 3583(k). *Id.* at 2373. During the period of supervised release, the defendant was found in possession of child pornography. *Id.* In addition to returning the offender to serve the original sentence, the trial court imposed a new mandatory minimum term of 5 years under 18 U.S.C. 3583(k) — making the sentence 5 to 10 years instead of the zero to 10 years originally imposed. It was the resentencing under the aggravating factor that the Supreme Court declared unconstitutional in violation of *Apprendi* principles since a jury did not make the additional finding of fact to authorize an enhanced minimum term. *Id.* at 2378. Importantly, the Supreme Court did not declare that retaining the inmate in prison during the zero to 10-year indefinite term originally imposed implicated

constitutional concerns but, instead, relied on the fact that the minimum term of imprisonment was increased based on a finding of fact that occurred in the postconviction process. *Id.*

{¶ 46} *Haymond* does not stand for the proposition that a state court cannot impose an indefinite sentence based on the executive branch's parole or release determinations. Any offender sentenced upon a qualifying felony must receive a minimum term under R.C. 2929.14(A)(1)(a) and (A)(2)(a), and a maximum term under R.C. 2929.144. To place that in perspective, such a sentence is equivalent to the original sentence imposed in the *Haymond* case, a sentence that was not questioned by the Supreme Court or by any party to the case. Any reliance on *Haymond* is misplaced.

{¶ 47} R.C. 2967.271(C) and (D) do not violate *Apprendi* or its progeny.

### d. Defendants' final claim that R.C. 2967.271 fails to provide the full panoply of trial rights is contrary to black-letter law

{¶ 48} The defendants' last claim deals with R.C. 2967.271(C) and (D). According to the defendants, R.C. 2967.271(C) and (D), which provide offenders with the right to a hearing before imposition of the maximum term imposed under R.C. 2929.144, has not provided the full panoply of constitutional rights afforded to a defendant in the criminal process, an issue left unaddressed in both *Simmons* and *Wilburn* and first arising in the conflict created by *Gamble* and *Delvallie*.

{¶ 49} In support of that claim, the defendants in *Gamble*, *Delvallie*, and *Daniel* in particular, provide a single paragraph of analysis:

Finally, while R.C. 2967.271 provides for a hearing before the additional prison time is imposed, the statute provides no structure as to how the hearing will be conducted or what rights the defendant will have at a hearing. Fourteenth Amendment due process as well as the Sixth Amendment and Article I, Section 10 of the Ohio Constitution recognize certain core rights as fundamental to the trial process. In addition to the right to trial by jury (discussed in Part II, and incorporated herein), these trial rights include:

> • The presumption of innocence and the requirement that proof by the prosecution rise to the level of proof beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 90 S.Ct. 106, 825 L.Ed.2d 368 (1970).

> • The right to counsel and to the appointment of counsel if indigent. *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

> • The right to confront witnesses. *Crawford v. Washington*, 541 U.S. 36, 52, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

> • The right to call witnesses and require their presence via subpoena. *Washington v. Texas*, 388 U.S.14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967).

> • The right to offer testimony. *In re Oliver*, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948).

Nowhere in the statute are these rights enunciated. Nor is there an applicable provision in the Ohio Administrative Code that the defense has been able to locate that expressly applies to these proceedings.

The premise of the defendants' due process claim is misplaced.

**{¶ 50}** It has never been concluded that inmates are due preconviction constitutional rights during enforcement of judicially imposed sentences. *Morrissey v. Brewer*, 408 U.S. 471, 480, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) (hereinafter "*Morrissey*") ("We begin with the proposition that the revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a

defendant in such a proceeding does not apply"); *Rose v. Haskins*, 21 Ohio St.2d 94, 95, 255 N.E.2d 260 (1970); *State ex rel. Sweet v. Capots*, 10th Dist. Franklin No. 93AP-340, 1993 Ohio App. LEXIS 5200, 9 (Oct. 26, 1993). Importantly, and despite the defendants' claims to the contrary, there is no inherent right to counsel during a parole revocation hearing, which is analogous to the maximum-term hearing according to the defendants who extensively claimed as much during oral argument on this matter. *State ex rel. Marsh v. Tibbals*, 149 Ohio St.3d 656, 2017-Ohio-829, 77 N.E.3d 909, ¶ 26.

{¶ 51} The Reagan Tokes Law is not unconstitutional based on the claims presented by the defendants.

### III. The dissents' conclusions do not provide a basis to declare the Reagan Tokes Law unconstitutional in its entirety

{¶ 52} Having addressed the merits of the arguments presented by the defendants, our analysis generally would be complete. The dissents build upon the panel discussions in *Delvallie*, *Sealey*, and *Daniel* to essentially claim that R.C. 2967.271(C) and (D) must either enumerate the rights afforded to an inmate during the maximum-term hearing or include an express delegation of authority to the executive branch to promulgate the rules. In the absence of either, according to the dissents, the statute is unconstitutional and any sentencing under R.C 2929.144 (maximum term) and R.C. 2929.14(A)(1)(a) and (A)(2)(a) (minimum term) must be declared void. Neither the Ohio nor federal Constitution mandates such a requirement. This issue, solely based on *Morrissey*, was raised in *Delvallie*, *Daniel*,

and *Sealey* and, therefore, should be addressed inasmuch as the en banc's resolution in favor of the constitutional validity of the Reagan Tokes Law overrules those decisions. Since appellate courts are required to provide reasons in support of a decision under App.R. 12(A)(1)(c), an explanation behind vacating *Delvallie*, *Daniel*, and *Sealey* is required.

{¶ 53} In *Morrissey*, the Supreme Court set forth the minimum requirements required at a parole revocation hearing, again the existing sentencing structure the defendants claimed to be applicable to the Reagan Tokes Law. Although *Delvallie*, *Daniel*, and *Sealey* present a thorough discussion of the creation of a liberty interest, we need not entertain that discussion. *See, e.g., Sealey*, 8th Dist. Cuyahoga No. 109670, 2021-Ohio-1949, at ¶ 11-20. Because this is a facial challenge to a statute, whether a liberty interest exists over an inmate's right to be released from a prison term is not relevant to the constitutional validity of the conviction itself because that liberty interest does not arise until after the offender is sentenced and his conviction deemed final. *Morrissey* at 480. "[T]he minimum requirements of due process," upon determining the existence of a liberty interest in an inmate's release from a prison term, include the following for parole revocation proceedings:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

*Morrissey*, 408 U.S. at 489.  Any violation of *Morrissey* requires a court of review to remand the matter for a hearing to be conducted in conformity with the procedural requirements. [5]  *State ex rel. Womack v. Sloan*, 152 Ohio St.3d 32, 2017-Ohio-8708, 92 N.E.3d 836, ¶ 6, citing *Scarberry v. Turner*, 139 Ohio St.3d 111, 2014-Ohio-1587, 9 N.E.3d 1022, ¶ 13 ("[t]he remedy for an alleged *Morrissey* due-process violation is a new hearing, not immediate release from confinement.").  Further, the legislature may delegate policy-making or rulemaking authority to an executive agency in compliance with all constitutional requirements.  *Morrissey* at 490.  According to *Morrissey,* if "the *procedures* followed by the Parole Board are found to meet the standards laid down in this opinion that, too, would dispose of the due process claims for these cases."  (Emphasis added.)  *Id.*; *see also Sealey* at ¶ 41; *Daniel*, 8th Dist. Cuyahoga No. 109583, 2021-Ohio-1963, at ¶ 41.  Both *Sealey* and *Daniel* at ¶ 41, recognize that the legislature may delegate authority to ODRC to draft the procedural rules to satisfy *Morrissey*, but disregard the legislature's delegation of authority under R.C. 5120.01 to accomplish the task*.*

---

[5] The question left unanswered by this en banc proceeding in which this court is solely considering the constitutional validity of the sentences imposed under the Reagan Tokes Law, and not the procedures with which ODRC conducts its maximum term hearings in carrying out the sentence as imposed by the trial court, is whether ODRC Policy 105-PBD-15 provides the minimum procedural protections afforded under *Morrissey*.  See Section IV. below.  In light of the fact that the remedy provided by a *Morrissey* violation is limited to a remand for a constitutionally adequate hearing process, as opposed to vacating the sentence, we need not address the question of whether ODRC's maximum term hearing policy is constitutionally sound.  That answer does not impact the validity of the imposed sentence.  The *Morrissey* question will be left for a later date when properly raised by the inmate in the proper jurisdiction.  *Id.*

{¶ 54} Any reliance on *Morrissey* to declare the Reagan Tokes Law unconstitutional and to preclude sentencing under R.C. 2929.144 and 2929.14(A)(1)(a) and (A)(2)(a) is misplaced, and as discussed in further detail below, is premature since the remedy for a *Morrissey* violation is to remand for a hearing in compliance with the Supreme Court's guidance, not to vacate the sentence or to declare the entire law unconstitutional. *Sloan* at ¶ 6.

{¶ 55} The issue must be addressed in terms of the delegation of authority to ODRC to provide the procedural rules and safeguards as required under R.C. 2967.271 and 5120.01. In other words, inasmuch as the panels in *Sealey* and *Daniel* argued that R.C. 2967.271(C) and (D) are silent as to the *Morrissey* procedural requirements of the maximum-term hearing, the question that poses is whether the legislature has properly delegated its authority to craft the procedural safeguards to ODRC rendering R.C. 2967.271 facially constitutional. *See O'Neal v. State*, 2020-Ohio-506, 146 N.E.3d 605, ¶ 32 (10th Dist.) (defendant challenged the legislature's delegation of authority to ODRC to draft its policy), *aff'd* by *O'Neal v. State*, Slip Opinion No. 2021-Ohio-3663. To ignore the delegation of authority principles at play with respect to the *Morrissey* analysis cannot be described as anything short of an attempt to hide an elephant in a mousehole. *See State ex rel. Hogan Lovells U.S., L.L.P. v. Ohio Dept. of Rehab. & Corr.*, Slip Opinion No. 2021-Ohio-1762, ¶ 71, citing *Whitman v. Am. Trucking Assns., Inc.*, 531 U.S. 457, 468, 121 S.Ct. 903, 149 L.Ed.2d 1 (2001).

### a. Neither the Reagan Tokes Law nor R.C. 2967.271 violates a prisoner's due process rights because the legislature has delegated authority to ODRC to provide the *Morrissey* safeguards

{¶ 56} By and large, S.B. 201 was not created out of whole cloth. The legislature borrowed from other aspects of the Ohio Revised Code to craft the indefinite sentences and the release determinations. In the broad push to declare the Reagan Tokes Law unconstitutional or unenforceable, it is easy to lose sight of the havoc that such a conclusion would bring to every other aspect of the sentencing and sentencing enforcement laws and regulations, which rely on the same process and procedures codified as part of the Reagan Tokes Law. In light of the *Sealey* and *Daniel* conclusions that R.C. 2967.271 violates *Morrissey*, the first question in need of resolution is whether the legislature can delegate authority to ODRC through R.C. 2967.271 to draft the procedural safeguards mandated under *Morrissey*.

{¶ 57} The short answer is it can, and ODRC complied. R.C. 5120.01; ODRC Policy 105-PBD-15, Section F, available at https://drc.ohio.gov/policies/parole-board (last visited Nov. 11, 2021). Under that delegation of authority, ODRC may be authorized to establish rules and policies given the agency's experience and on-the-ground presence. *Nix The "Fix": An Analysis On Ohio's Criminal Sentencing Law And Its Effect On Prison Population*, 47 Cap.U.L.Rev. 755, 786 (2019); *Cleveland Metro. Bar Assn. v. Davie*, 133 Ohio St.3d 202, 2012-Ohio-4328, 977 N.E.2d 606, ¶ 42 (citing ODRC policy).

{¶ 58} No constitutional provision requires the legislature to expressly set forth each and every right afforded to an offender at every stage of proceedings created by statutory process. *AMOCO v. Petroleum Underground Storage Tank Release Comp. Bd.*, 89 Ohio St.3d 477, 480, 2000-Ohio-224, 733 N.E.2d 592 (the General Assembly may delegate rulemaking authority to an executive agency); *State v. Schreckengost*, 30 Ohio St.2d 30, 32, 282 N.E.2d 50 (1972); *O'Neal*, 2020-Ohio-506, 146 N.E.3d 605, at ¶ 50 (10th Dist.) ("the General Assembly constitutionally may delegate authority to promulgate rules, policies, and regulations to subordinate boards and agencies"), citing *Princeton City School Dist. Bd. of Edn. v. Ohio State Bd. of Edn.*, 96 Ohio App.3d 558, 560, 645 N.E.2d 773 (1st Dist.1994), and *Belden,* 143 Ohio St. at 342, 55 N.E.2d 629. For that, the legislature is free to delegate authority to the executive branch. *Warner*, 55 Ohio St.3d at 43-44, 564 N.E.2d 18, citing *Harmon*, 31 Ohio St. 250, and *State, ex rel. Bryant*, 120 Ohio St. 464.

{¶ 59} In *Sealey*, for example, the panel relied on *Wilkinson v. Austin*, 545 U.S. 209, 226, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005), and *Wolff v. McDonnell*, 418 U.S. 539, 563, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), in particular to demonstrate the existence of a liberty interest. *Sealey*, 8th Dist. Cuyahoga No. 109670, 2021-Ohio-1949, at ¶ 12-14. That reliance, however, fails to address the fact that both cases involved reviewing the rules or policies established by the executive agency in separate actions initiated under 42 U.S.C. 1983. *See generally Wilkinson* and *Wolff.* In other words, in both cases, the Supreme Court was reviewing policies and procedures of an executive agency for constitutional compliance. In *Wilkinson*, in

the habeas corpus petitions brought by several inmates, the Supreme Court reviewed two versions of ODRC Policy 111-07 (Aug. 31, 1998). *Wilkinson* at 215. In *Wolff*, on behalf of himself and other inmates of the Nebraska Penal and Correctional Complex, Lincoln, Nebraska, an inmate filed a complaint under 42 U.S.C. 1983 challenging several of the practices, rules, and regulations of the complex. *Wolff* at 542. As both of those cases teach, the legislature is not required to codify all rules and procedures under the statutory provision but instead can defer to the executive agency's establishment of its own rules or procedures to safeguard constitutional concerns, which must be challenged through the appropriate mechanisms.

{¶ 60} Although R.C. 2967.271 omits language authorizing ODRC to draft rules and procedures for the maximum-term hearings, the drafters are presumed to understand the entirety of the Revised Code. Under R.C. 5120.01, "all duties" conferred upon ODRC by the legislature "shall be performed under the rules and regulations that the director prescribes." The use of the term "policy" by ODRC will be discussed in greater detail below. That said, R.C. 2967.271 "does not exist in a vacuum. It is a creature of the Revised Code, it is subservient to the Revised Code, and it necessarily incorporates the Revised Code." *Bibler v. Stevenson*, 150 Ohio St.3d 144, 2016-Ohio-8449, 80 N.E.3d 424, ¶ 15. Thus, the drafters have a presumed awareness of R.C. 5120.01 and the requirement that any statutory process creating a duty for ODRC to undertake must have procedures established to carry out the function. It need not be reiterated throughout every other statutory section

creating an obligation for ODRC to act, although such a redundancy could be considered a "best practices" approach to avoid the necessity of scouring the Revised Code for the enabling language. *See, e.g., O'Neal* at ¶ 31; *State v. Tanner,* 2d Dist. Clark No. 2020-CA-9, 2020-Ohio-5413, ¶ 17; *State v. Emch*, 9th Dist. Summit No. 20372, 2002-Ohio-3861, ¶ 21.

{¶ 61} But such an approach is unnecessary. The Revised Code contains other sections that provide neither the express procedures for conducting a hearing nor an express delegation of authority for the executive branch to promulgate those policies, rules, or procedures. For example, under R.C. 2971.04, the legislature has tasked the parole board to conduct a hearing to determine whether to terminate control over the offender after the offender has served the minimum term under R.C. 2971.03 (sentencing of sexually violent offender with predator specification). R.C. 2971.04. Contrary to the dissent's assertion otherwise, R.C. 2971.04 is silent as to any delegation of authority to promulgate rules, regulations, or policies detailing the procedures or means of carrying out the hearing, similar to R.C. 2967.271. The only express delegation of authority within R.C. 2971.04(A) is found in the declaration that the parole board may follow ODRC's guidelines as established under R.C. 5120.49 for the purposes of the parole board making its determination following the hearing. Under R.C. 5120.49, ODRC "by rule adopted under Chapter 119. of the Revised Code, shall prescribe standards and guidelines to be used by the parole board in determining * * *" whether to terminate the parole board's control over the indefinite term. As far as establishing the hearing procedures themselves

with the plain language of the statute, R.C. 2971.04(A) does not include all due process procedural requirements; only the inmate's right to present evidence before the parole board is statutorily established.[6] No other *Morrissey* requirement was mandated, such as the written conclusions in support of the denial of release and the disclosure of the contents of the risk assessment report submitted directly to the parole board.

{¶ 62} Despite the lack of express delegation of policy-making authority under R.C. 2971.04 to establish all missing procedural requirements for the hearing itself, ODRC has promulgated ODRC Policy 105-PBD-11, for the express purpose of "establish[ing] a standard procedure for the parole board to efficiently and consistently carry out its duties pursuant to Ohio Revised Code (ORC) section 2971.04." As part of that policy, the ODRC has promulgated the specific hearing procedures, beyond simply permitting the inmate to present evidence, controlling the means and manner in which the hearing occurs. This includes a provision that permits the inmate's counsel to be present during the hearing, among other

---

[6] Thus, if the dissent's assertion that R.C. 2971.04 contains an express delegation of authority based on the presence of one of the six *Morrissey* requirements, then R.C. 2967.271 should also pass constitutional muster according to the dissent's theory. Under R.C. 2967.271(C), the ODRC undertakes the hearing to decide the release question through its parole board based on evidence presented to the inmate from the prison infraction process. *Morrissey*, 408 U.S. at 489. ODRC and its parole board have traditionally been considered a "neutral and detached" hearing body such that R.C. 2967.271(C) at least contains an express delegation of authority satisfying less than all of the *Morrissey* requirements, similar to R.C. 2971.04 that contains the requirement of the inmate's presence to present evidence at the hearing. *Woods*, 89 Ohio St.3d at 514, 2000-Ohio-171, 733 N.E.2d 1103.

procedures not covered under the express language of the statute, a provision not expressly required under R.C. 2971.04.  ODRC Policy 105-PBD-11 VI. E.

{¶ 63} This is similar to the legislature's decision in drafting R.C. 2967.271 to permit ODRC to draft the *Morrissey* procedures under the general grant of authority under R.C. 5120.01 required to implement R.C. 2967.271(C) and (D), as contrasted against the legislature's specific requirement that ODRC promulgate rules under R.C. 2967.271(F) (the director of ODRC "by rule shall specify both of the following for offenders serving a non-life felony indefinite prison term * * *.").  Both R.C. 2967.271 and 2971.04 follow the same pattern.  The legislature is presumed to understand the law, and under *Morrissey*, there is no requirement for the legislature or the executive branch to codify statutory or administrative rules in enacting procedures compliant with the *Morrissey* guidelines.  *Wilkinson*, 545 U.S. at 228, 125 S.Ct. 2384, 162 L.Ed.2d 174 (holding that Ohio's "new policy" promulgated under ODRC Policy 111-07 provided constitutionally valid procedures ensuring the protection of the inmate's liberty interest).

{¶ 64} Since R.C. 2971.04 is similar to R.C. 2967.271 in that there are no express guidelines provided by the legislature and no express delegation of policy-making authority to establish the hearing procedures, R.C. 2971.04 is potentially impacted under the dissents' stated rationale for declaring R.C. 2967.271 to be unconstitutional and contrary to the unanimous conclusions reached by the Supreme Court in *Wilkinson*.  It is for this reason that constitutional challenges must be narrow and precise.  The damage caused by broad theories as advanced in

*Delvallie, Sealey*, and *Daniel* could be devastating as more statutes must fall prey to the overly broad constitutional analysis.

{¶ 65} Furthermore, the net effect of the conclusions reached in the dissenting opinions, if those were to be adopted by this court, is a declaration that the Ohio legislature may not delegate authority to the executive agency through separate provisions of the Ohio Revised Code, but must instead provide detailed rules and policies within the statutory section that creates the particular process, otherwise that statutory provision is unconstitutional. Beyond the damage to other statutory sections, such a broad declaration is in essence declaring that R.C. 5120.01 is a nullity, invalidating other policies that guide the ODRC's substantive responsibilities over tasks mandated by law: Clemency Procedure: Death Penalty Cases (105-PBD-01) ("The purpose of this policy is to establish a standard procedure for considering clemency in death penalty cases."); Kellogg Hearings (105-PBD-02) ("The purpose of this policy is to establish a standard procedure for providing mitigation hearings to those recommissioned offenders affected by the consent decree in *Kellogg, et al. v. Shoemaker, et al.*, (1996), 927 F. Supp 244."); Parole Board Release Consideration Hearings (105-PBD-03) ("The purpose of this policy is to foster consistent parole board hearing procedures designed to promote public confidence and safety, as well as fair and objective decision-making, and to establish procedures for transferring eligible inmates to transitional control."); Request for Reconsideration and Amendments to Parole Board Actions (105-PBD-04) ("The purpose of this policy is to institute a fair and equitable process for the

reconsideration of Parole Board decisions and the amendment of Parole Board actions."); Clemency Procedure: Non-Death Penalty Cases (105-PBD-05) ("The purpose of this policy is to establish a standard procedure for the application, processing, review, hearing and decision-making steps of the clemency process in non-death penalty cases."); Full Board Hearing (105-PBD-06); Post Release Control Screening and Assessment (105-PBD-08) ("The purpose of this policy is to establish uniform guidelines and procedures for assessing offenders for post release control (PRC); imposing conditions of PRC supervision; and reducing the duration of supervision."); Violation Hearing Process (105-PBD-09); Sexually Violent Predators (105-PBD-11); Statutory Notice (105-PBD-13); 80% Court Release (105-PBD-14); Additional Term Hearing (105-PBD-15) — all of which are solely promulgated under R.C. 5120.01. Available at https://drc.ohio.gov/policies/parole-board.

{¶ 66} On this latter point, much emphasis is placed on *Morrissey*, 408 U.S. at 489, as it pertains to Ohio's parole revocation statute, R.C. 2967.15, and that section's compliance with the *Morrissey* requirements. *Morrissey* itself does not even require the legislature to codify the procedural details, nor does it require the executive agency to formally draft rules in compliance with *Morrissey*. *See, e.g., Wilkinson*, 545 U.S. at 224, 125 S.Ct. 2384, quoting *Morrissey* ("Because the requirements of due process are 'flexible and cal[l] for such procedural protections as the particular situation demands,' we generally have declined to establish rigid rules and instead have embraced a framework to evaluate the sufficiency of particular procedures."). After opining that a state's statutory standards may

provide the constitutional compliance with the *Morrissey* decision, the Supreme Court also concluded that "if the *procedures followed* by the Parole Board are found to meet the standards laid down in this opinion that, too, would dispose of the due process claims for these cases." (Emphasis added.) *Morrissey,* 408 U.S. at 490. Thus, the Supreme Court acknowledges that the executive agency's policies or procedures may satisfy due process concerns in addition to the statutory procedures, and those types of policy in Ohio arise from the legislature's delegation of authority to the executive branch.

{¶ 67} *Morrissey* does not stand for the proposition that the legislature needs to codify the procedural protections into an unmalleable statutory scheme. On the contrary, "once it is determined that the Due Process Clause applies, 'the question remains what process is due.' The answer to that question is not to be found in the Ohio statute." *Cleveland Bd. of Edn. v. Loudermill*, 470 U.S. 532, 541, 105 S.Ct. 1487, L.Ed.2d 494 (1985), quoting *Morrissey.* This is because *Morrissey* speaks of the procedural requirements in general terms and not to any specific state statutory requirements. *Witzke v. Pullins-Govantes*, 397 F.Supp.3d 975, 980 (E.D.Mich.2019); *Gonzalez v. Fife*, W.D.Wash. No. C07-5278, 2008 U.S. Dist. LEXIS 46956, at 23-24 (June 17, 2008), citing *Morrissey* (finding statutory procedures inadequate is not a finding that the statute is invalid based on *Morrissey*). Although the constitutional protections can be enacted through statutory language, there is no requirement to do so. *See, e.g., Kell v. United States Parole Comm.*, 26 F.3d 1016, 1022 (10th Cir.1994) (concluding that the statutes and

federal regulations were not violated and that no additional protections were afforded under *Morrissey*); *Vanes v. United States Parole Comm.*, 741 F.2d 1197, 1199 (9th Cir.1984) (noting that the *Morrissey* protections were prescribed by statute, regulation, and local procedures).

{¶ 68} We do not and cannot review the constitutional validity of statutes in a vacuum, especially when the challenged provisions rely on statutory language and procedures codified throughout the Revised Code. R.C. 2967.271(C) and (D) do not contain the policies and procedures under which the maximum-term hearings will be conducted. As discussed above, nothing requires the legislature to provide this detail. *See* R.C. 2967.15. In deeming R.C. 2967.271(C) and (D) constitutionally infirm, the panels in *Delvallie*, *Sealey*, and *Daniel* have tacitly declared that the legislature cannot delegate authority to an executive agency or that the legislature is required to codify the details of any statutorily created hearing process.

{¶ 69} Since *Morrissey* does not preclude the legislature from delegating authority to ODRC to promulgate the *Morrissey* procedural safeguards in lieu of codifying the procedures within the statutory text or through a formal administrative rulemaking or policy-making process, the next question involves the impact of ODRC Policy 105-PBD-15 on R.C. 2967.271(C) and (D) on *Delvallie*, *Sealey*, and *Daniel's* conclusions.

### b. Administrative rules or policies, like statutes and ordinances, have the force of law and must be independently challenged

{¶ 70} ODRC Policy 105-PBD-15 was expressly promulgated under R.C. 5120.01 and, therefore, must be considered as filling in the legislative gaps left by R.C. 2967.271. *Rodriguez v. United States Parole Comm.*, 594 F.2d 170, 173 (7th Cir.1979); *O'Neal*, Slip Opinion No. 2021-Ohio-3663, ¶ 57, quoting *Northwestern Ohio Bldg. & Constr. Trades Council v. Conrad*, 92 Ohio St.3d 282, 289, 750 N.E.2d 130 (2001). When the legislature delegates authority to an agency instead of codifying the rule itself, the resulting administrative rule or regulation is an extension of the statute for all intents and purposes. *Rodriguez* at 173; *O'Neal* at ¶ 57. The dissent gives an undue weight to the fact that *Rodriguez* relied on the word "rule" rather than "policy." First and foremost, Ohio draws no distinction between the legal enforcement of an administrative rule as compared to a policy. *O'Neal* at ¶ 59 ("the great majority of directives that agencies issue, whether formally promulgated or not, fill in legislative gaps by solving matters that have not been specified by statutes."). But regardless, in *Rodriguez,* for example, the federal court was determining whether an administrative regulation enacted by the Parole Commission during the inmate's incarceration could be retroactively applied against the habeas petitioner. *Id.* at 173. The regulation at issue was enacted under the now repealed 18 U.S.C. 4203(a)(1), which was similar to R.C. 5120.01 in that the

legislature authorized the administrative body "to adopt 'rules and regulations' as are necessary to carry out a national parole policy." *Id.*

{¶ 71} R.C. 5120.01 authorizes ODRC Policy 105-PBD-15 under ODRC's authority to promulgate "rules and regulations." Although ODRC Policy 105-PBD-15 is self-described as a policy, the Ohio Supreme Court does not draw a distinction between an administrative rule and a policy enacted through R.C. 5120.01 for the purposes of reviewing the policy. In *Davie*, 133 Ohio St.3d 202, 2012-Ohio-4328, 977 N.E.2d 606, at ¶ 42, for example, the Ohio Supreme Court was discussing ODRC Policy 105-PBD-06(VI)(E)(4) (eff. July 8, 2011), which authorized a non-attorney representative to communicate with the parole board orally and in writing on behalf of another inmate. *Id.* at ¶ 39. Importantly for our purposes, in reference to ODRC policy, the Ohio Supreme Court concluded that neither a statute nor an "administrative rule" could override the Ohio Supreme Court's authority over the regulation of attorney conduct. *Id.* at ¶ 40. Thus, the Ohio Supreme Court concluded that ODRC policy, treated as an administrative rule, could not override its authority over the practice of law, instead of simply declaring that a policy issued under R.C. 5120.01 is of no legal force or effect.

{¶ 72} We cannot draw any conclusions from ODRC's chosen nomenclature, especially since R.C. 5120.01 expressly authorizes ODRC to draft "rules or regulations" governing "all duties" conferred upon ODRC by the legislature. For our purposes, the use of the term "administrative policy" is synonymous with "administrative rule" for the purposes of *Morrissey*, although there are different

requirements for enactment of rules or policies.  To conclude otherwise simply elevates form over substance at the expense of Supreme Court precedent.  *See Wilkinson*, 545 U.S. at 228, 125 S.Ct. 2384, 162 L.Ed.2d 174 (holding that Ohio's "new policy" promulgated under ODRC Policy 111-07 provided constitutionally valid procedures ensuring the protection of the inmate's liberty interest despite the lack of a statutorily codified procedure).  Since *Sealey* and *Daniel*, in particular, both rely on *Morrissey*, the sole concern is whether ODRC promulgated the procedures satisfying the guidelines set forth therein.  *Morrissey* does not require a statutory procedure or one promulgated through formal agency rulemaking.

{¶ 73} Accordingly, as the Tenth District has concluded, "[*a*]*dministrative policies* are a means of accomplishing a legislative end."  (Emphasis added.)  *O'Neal*, 2020-Ohio-506, 146 N.E.3d 605, at ¶ 33 (10th Dist.), quoting *Burden v. Ohio Dept. of Job & Family Servs.*, 10th Dist. Franklin No. 11AP-832, 2012-Ohio-1552, ¶ 21, and *Doyle v. Ohio Bur. of Motor Vehicles*, 51 Ohio St.3d 46, 47, 554 N.E.2d 97 (1990).[7]

> When *agencies promulgate policies* and regulations to fill legislative gaps, "courts * * * must give due deference to an administrative interpretation formulated by an agency that has accumulated substantial expertise, and to which the General Assembly has delegated the responsibility of implementing the legislative command."

---

[7] While concerns about enactments by rule, regulation, or policy may be relevant for a detailed procedure involving the imposition of capital punishment and the protocols surrounding it, any questions involving the enactment of ODRC Policy 105-PBD-15 ultimately go to what due process that policy affords inmates.  No defendant to date has challenged the enactment of ODRC Policy 105-PBD-15 on any grounds, constitutional or otherwise.

(Emphasis added.) *Id.*, quoting *Northwestern Ohio Bldg. & Constr. Trades Council*, 92 Ohio St.3d at 287, and *Swallow v. Indus. Comm. of Ohio*, 36 Ohio St.3d 55, 57, 521 N.E.2d 778 (1988).

{¶ 74} ODRC Policy 105-PBD-15 need not be formally adopted as a "rule" in order to fill the gaps left by R.C. 2971.271(C)-(D). *O'Neal* at ¶ 33. As was expressly concluded in *O'Neal,* "*[p]olicies* promulgated by administrative agencies are valid and enforceable * * *" under the executive agency's rulemaking authority. (Emphasis added.) *O'Neal*, at ¶ 34, 51, citing *Williams v. Spitzer Autoworld Canton, L.L.C.*, 122 Ohio St.3d 546, 2009-Ohio-3554, 913 N.E.2d 410, ¶ 18, and *Hoffman v. State Med. Bd. of Ohio*, 113 Ohio St.3d 376, 2007-Ohio-2201, 865 N.E.2d 1259, ¶ 17. "'[T]he power of an administrative agency to administer a * * * program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by the legislature.'" *O'Neal* at ¶ 33, quoting *Northwestern* at 287, and *Morton v. Ruiz*, 415 U.S. 199, 231, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974). Without the policies or rules, ODRC would be derelict in failing to administer its obligations under both R.C. 2967.271(C) and (D) and R.C. 5120.01. When executive or administrative agencies establish policies or regulations "to fill legislative gaps, 'courts * * * must give due deference to an administrative interpretation formulated by an agency that has accumulated substantial expertise, and to which the General Assembly has delegated the responsibility of implementing the legislative command.'" *Id.*, quoting *Northwestern* at 289 and *Swallow*, 36 Ohio St.3d at 57, 521 N.E.2d 778.

**{¶ 75}** The Tenth District's conclusions in *O'Neal* were affirmed by the Ohio Supreme Court. "'As the United States Supreme Court has noted, "[t]he power of an administrative agency to administer a * * * program necessarily requires the formulation of *policy and the making of rules* to fill any gap left, implicitly or explicitly," by the legislature.'" (Emphasis added.) *O'Neal*, Slip Opinion No. 2021-Ohio-3663, at ¶ 57, quoting *Northwestern* at 289, and *Morton v. Ruiz*, 415 U.S. 199, 231, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974). Not "all legislative gaps must be filled with formal rulemaking." *Id.* at ¶ 58. In fact, a "great majority of directives that agencies issue, whether formally promulgated or not, fill in legislative gaps by solving matters that have not been specified by statutes." *Id.* at ¶ 59.

**{¶ 76}** Thus, ODRC Policy 105-PBD-15, must be considered as filling the legislative procedural gaps left by the codified language of the statute being challenged as unconstitutional based on the legislative omissions. ODRC's policy is expressly meant to safeguard an inmate's due process rights in light of the legislature's decision to delegate authority to ODRC to conduct the hearing under R.C. 2967.271(C) and (D) and to establish constitutionally valid procedures under R.C. 5120.01.

**{¶ 77}** Contrary to the black-letter law discussed in *O'Neal*, it has been suggested that ODRC policy is not akin to a rule or a regulation and, therefore, cannot be enforced or even discussed. As previously discussed, any difference between describing ODRC Policy 105-PBD-15 as a "policy" or a "rule" is not one of distinction for the purposes of applying *Morrissey*, which only requires the

executive branch to implement procedures under the *Morrissey* guidelines. In order to avoid the implications of the delegation of authority and the effect of ODRC Policy 105-PBD-15, the dissent claims that "an administrative policy" is not to be enforced as an extension of the statute, citing *Oko v. Mohr*, 11th Dist. Ashtabula No. 2011-A-0045, 2012-Ohio-1450, and *State ex rel. Estate of Sziraki v. Admr., Bur. of Workers' Comp.*, 10th Dist. Franklin No. 10AP-267, 2011-Ohio-1486.

{¶ 78} In *Oko*, the panel opined that the policy being discussed was promulgated under R.C. 5120.01 and constituted a policy, to be differentiated from an "administrative rule." *Id.* at ¶ 16. First and foremost, R.C. 5120.01 authorizes ODRC to promulgate "rules and regulations," not "policies." Thus, any "policy" promulgated under R.C. 5120.01 is statutorily considered a "rule" or "regulation." Regardless, the relator in *Oko* referred to the policy as an "Administrative Rule." The court disagreed with that characterization, but that difference did not impact the conclusion that the policy in question did not require ODRC to issue the prisoner a second prison identification number. *Id.* In other words, the court reviewed the particular policy and determined that it did not provide for the relief the relator requested. If the policy was not enforceable, the court could have merely declared that as a policy, it was to be disregarded in its entirety. *Id.* Instead, it reviewed the policy on its merits and concluded the policy did not afford the relator his requested relief. *Oko's* offhand statement in dicta does not support a conclusion that ODRC Policy 105-PBD-15 can be ignored.

{¶ 79} Similarly, in *Sziraki*, the panel adopted a magistrate's decision in which it was concluded that an isolated statement on the Bureau of Workers' Compensation's website did not constitute a "rule" and in making that declaration, the magistrate referred to the statement as a "policy." *Id.* at Appendix. The relator in that writ action was attempting to argue that a statement on the Bureau of Workers' Compensation's website should be enforced as a legal requirement. *Id.* The magistrate's decision, as adopted by the panel, declined to enforce the statement from the website as a controlling policy or procedure that the legislature authorized the agency to promulgate under its rulemaking authority. *Id.* Thus, the *Sziraki* Court, at most, concluded that the statement on the website did not carry the force of law.

{¶ 80} There is no dispute that ODRC Policy 105-PBD-15 was established under R.C. 5120.01 and is not simply a statement on ODRC's website like the "policy" at issue in *Sziraki* that was not promulgated under R.C. 5120.01. It should go without saying that an isolated statement on a website from an unknown author is distinguishable from the Ohio legislature's delegation of authority under R.C. 5120.01 to the director of ODRC to promulgate binding "rules and regulations" to govern "all duties" the legislature tasks ODRC to undertake. *Id.*

{¶ 81} Neither *Oko* nor *Sziraki* is applicable. Nothing within those two case decisions stands for the proposition that a "policy" duly enacted through ODRC's authority under R.C. 5120.01 is to be disregarded or is otherwise unenforceable for the purposes of applying *Morrissey* when considering statutory text. Any overly

broad declaration that a "policy" enacted under R.C. 5120.01 fails to carry the weight of law has far-ranging implications for ODRC's delegated authority to act, impacting ODRC's ability to function. *O'Neal*, 2020-Ohio-506, 146 N.E.3d 605, at ¶ 29 (10th Dist.) (R.C. 5120.01 grants broad executive powers to ODRC to promulgate rules and regulations necessary to carry out its functions).

{¶ 82} At this juncture of the proceedings, it should be enough to acknowledge that *Sealey's* and *Daniel's* due process analysis, regarding the omission of codified procedures in reliance on *Morrissey*, fail due to the existence of ODRC Policy 105-PBD-15 that must be considered as part of R.C. 2967.271(C) and (D), filling the legislative procedural gaps. *See, e.g., Wilkinson,* 545 U.S. at 220, 125 S.Ct. 2384, 162 L.Ed.2d 174 (reviewing the Rev.Stat. 1979, 42 U.S.C. 1983 action to determine the constitutional validity of the procedural rules established by ODRC's statutorily authorized rulemaking authority); *see also Wolff,* 418 U.S. at 551, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (reviewing prison regulations for constitutional compliance under *Morrissey* in 42 U.S.C. 1983 action). Since the dissents have concluded that R.C. 2967.271 is silent as to the *Morrissey* procedural safeguards, we must at least acknowledge that the silence is based on the legislature's delegation of authority to ODRC to craft the policies and procedures under which the maximum-term hearings are conducted. The legislature may delegate authority to the executive branch to promulgate those procedural safeguards under prevailing constitutional analysis, so the omission of the *Morrissey* requirements in R.C. 2967.271 cannot be the basis of declaring the Reagan Tokes Law unconstitutional.

### c. The dissents' conclusions challenge statutory provisions that extend beyond the Reagan Tokes Law

{¶ 83} The *Morrissey* minimum parole revocation hearing requirements, specifically identified in the dissenting opinions, are not enumerated in Ohio's parole revocation statute, R.C. 2967.15. Instead, those requirements are enacted or enforced under the executive agency's authority to establish policies, rules, or regulations separate from the Ohio Revised Code. Under R.C. 2967.15(B), "the adult parole authority shall grant the person a hearing in accordance with rules adopted by the department of rehabilitation and correction under Chapter 119 of the Revised Code." Certainly, there cannot be any suggestion that Ohio's parole revocation statute is unconstitutional since R.C. 2967.15 is silent as to the *Morrissey* minimum requirements and solely relies on ODRC's policy-making authority. *See, e.g.*, *Wilson v. State*, 101 Ohio App.3d 487, 493, 655 N.E.2d 1348 (4th Dist.1995) (concluding that the prisoner failed to demonstrate that R.C. 2967.15 was unconstitutional beyond a reasonable doubt).

{¶ 84} But that is exactly the conclusion that must be reached based on the dissents' analysis declaring R.C. 2967.271(C) and (D) unconstitutional based on the failure to enumerate the *Morrissey* procedural requirements in the statutory section instead of relying on the delegation of authority to ODRC to promulgate the procedural rules or policies. In declaring R.C. 2967.271(C) and (D) unconstitutional, the dissents rely on an argument that would similarly impact R.C. 2967.15, which also fails to delineate the policies and procedures to be used at the parole revocation

hearing, among other provisions of the Ohio Revised Code. This is not the only administrative rule, regulation, policy, or procedure that is impacted by such a broad declaration.

{¶ 85} In *Delvallie*, 8th Dist. Cuyahoga No. 109315, 2021-Ohio-1809, at ¶ 66, for example, the panel declared that the Reagan Tokes Law deprives inmates of their due process rights because R.C. 2967.271 was vague. In *Delvallie*, the panel opined that

> public media is replete with reports of attacks by inmates against inmates, inmates against corrections officers, and corrections officers against inmates. Does the statute advise, for example, that if attacked by a definite term inmate with nothing to lose, the offender best run like the wind because involvement in an altercation, assuming he survives, could cost him his release?

*Id.* at ¶ 68. *Delvallie* then claimed that R.C. 2967.271(C) and (D) are unconstitutional because of the lack of due process concerning the prison rule infraction system.

{¶ 86} The challenge to the prison rule infraction system as a reason to invalidate the Reagan Tokes Law cannot be viewed in isolation. No provision of the Reagan Tokes Law creates a new prison rule infraction system permitting ODRC to unilaterally act without recourse or procedural guidance. Ohio Adm.Code 5120-9-08 sets forth an inmate's rights and the procedures the Rules Infraction Board are to follow in imposing any and all institutional infractions upon the inmates. *See, e.g., Oko v. Lake Erie Corr. Inst.*, 11th Dist. Ashtabula No. 2010-A-

0002, 2010-Ohio-2821, ¶ 3 (overruling a constitutional challenge to the decision by the Rules Infraction Board).

{¶ 87} R.C. 2967.271(C) and (D) simply rely on the results of those proceedings, which are conducted under an Ohio Administrative Code section that has not been challenged and, importantly, is not part of the Reagan Tokes Law itself. The maximum-term hearing simply borrows from the results of that rules infraction proceeding, and *Delvallie's* claim that the infraction system is constitutionally infirm impacts the current provisions of the Ohio Revised Code well beyond our current review. R.C. 2967.271(C) (relying on the results of the rules infraction board); ODRC Policy 105-PBD-15, Section VI. B. 1-3. Any challenges to the infraction system must be advanced through a separate writ action when the infraction has been declared and impacts the duration of confinement. *State ex rel. Larkins v. Wilkinson*, 79 Ohio St.3d 477, 479, 683 N.E.2d 1139 (1997) (writ of mandamus will not lie "absent evidence that the challenged institutional action would affect the inmate's duration of confinement"), citing *Samuels v. Mockry*, 77 F.3d 34, 37 (2d Cir.1996); *Lane v. Russell*, 109 Ohio App.3d 470, 473, 672 N.E.2d 684 (12th Dist.1996). *Delvallie's* claims with respect to the prison infraction system have no bearing on the Reagan Tokes Law. More to the point, if we were to accept *Delvallie's* conclusion, Ohio Adm.Code 5120-9-08 is likewise to be declared unconstitutional since that creates the framework *Delvallie* questions.

{¶ 88} Any conclusion that R.C. 2967.271(C) and (D) deprive offenders of their due process rights is solely based on reviewing R.C. 2967.271 to the exclusion

of ODRC rules, policies, or procedures established under R.C. 5120.01. ODRC Policy 105-PBD-15. Through R.C. 2967.271(C) and (D), the legislature tasked ODRC with conducting hearings to determine enforcement of the maximum term imposed under R.C. 2929.144, the notice for which occurs under R.C. 2967.12, the notice statute for parole hearings. The legislature further authorized the director of ODRC to establish policies, rules, and procedures in compliance with its statutory duties based on the legislature's delegation of authority to the executive agency. R.C. 5120.01; ODRC Policy 105-PBD-15, Section I. R.C. 2967.271 is not unconstitutional based on a *Morrissey* violation.

## IV. The State's Claim as to the Ripeness of Reviewing the Validity of the Imposed Sentences is Overruled

{¶ 89} And finally, there is a distinction that must be addressed between challenging the imposition of a sentence by claiming the statute authorizing the sentence is constitutionally infirm and appealing the lack of due process for the specific manner in which the sentence for a particular inmate is later carried out. These appeals, being considered en banc, deal with the first question, and that is the only question at this stage that is ripe for our review.

### a. Distinguishing the claims that are ripe for review from the claims implicating ODRC's rulemaking authority

{¶ 90} We are tasked with determining whether the sentence as constructed under the Reagan Tokes Law is valid, and that question can only be raised in a direct appeal. If the sentence, as imposed, is valid at this stage, an inmate has the later right to challenge the actual process or procedures that particular inmate will be

subjected to when the sentence is actually carried out by the executive branch. The remedy to a second claim, when it becomes ripe, will not be to invalidate the sentence or conviction, but instead the remedy will be only to require a constitutionally sound proceeding through which the defendant's sentence can be completed. *Sloan*, 152 Ohio St.3d 32, 2017-Ohio-8708, 92 N.E.3d 836, at ¶ 6, citing *Scarberry*, 139 Ohio St.3d 111, 2014-Ohio-1587, 9 N.E.3d 1022, at ¶ 13 ("[t]he remedy for an alleged *Morrissey* due-process violation is a new hearing, not immediate release from confinement.").

{¶ 91} This cannot be overemphasized. The appropriate mechanism to challenge the validity of policies, rules, regulations, or protocols established by the executive is through a separate declaratory judgment or habeas action seeking to preclude ODRC from enforcing them, which only occurs at the actual time when those policies, rules, regulations, or protocols are being applied against the inmate. *See, e.g., O'Neal*, 2020-Ohio-506, 146 N.E.3d 605, at ¶ 3 (10th Dist.); *Kellogg v. Shoemaker*, 46 F.3d 503 (6th Cir.1995); *Rodriguez*, 594 F.2d 170, 173 (7th Cir.1979); *State v. Kepling*, 3d Dist. Hancock No. 5-20-23, 2020-Ohio-6888, ¶ 15, fn. 3. Any claims implicating the deprivation of due process rights impacted by ODRC's published policy with respect to the maximum-term hearing process are not ripe for review in a direct appeal because that hearing has not taken place. *See, e.g., Wilkinson*, 545 U.S. at 220, 125 S.Ct. 2384, 162 L.Ed.2d 174 (reviewing the Rev.Stat. 1979, 42 U.S.C. 1983 action to determine the constitutional validity of the procedural rules established by ODRC's statutorily authorized rulemaking authority). This type

of post-sentencing review is a challenge against how the defendant's sentence is carried out, as contrasted with a direct appeal that challenges the imposition of a sentence.

{¶ 92} On this point, the state, in its general claim that these issues are not ripe for review, appears to be confusing challenges to the imposition of a sentence, *State v. Patrick*, 164 Ohio St.3d 309, 2020-Ohio-6803, 172 N.E.3d 952, ¶ 22 (the constitutional validity of the imposed indefinite sentence is immediately appealable), with the ripeness of the due process claims against an executive agency's enforcement of rules, policies, regulations, or protocols the agency uses to carry out the defendant's sentence. *Kepling* at ¶ 15, fn. 3 (noting the state's ripeness claim is "in effect" targeting a declaratory judgment action under R.C. Chapter 2721 that is not ripe for review in a direct appeal). This requires a more thorough discussion, but in fairness, at oral argument the state conceded the difference between the ripeness of appeals challenging the imposition of the sentence and claims challenging the means in which the sentence is carried out that are not ripe for review in a direct appeal — in apparent agreement with the following.

{¶ 93} In *Patrick*, for example, the Ohio Supreme Court concluded that an appeal of an indefinite sentence imposed for aggravated murder or murder based on constitutional challenges to the imposed sentence may be considered in the direct appeal despite statutory limitations. *Patrick* at ¶ 22. Although not directly on point, *Patrick* is instructive. In essence, *Patrick* maintains that an offender sentenced to serve an indefinite term of imprisonment may challenge the constitutional validity

of the sentence itself, including challenges to the sentencing structure upon which the sentence is based, in the direct appeal. This is no different from the conclusion reached in *Wilburn,* 8th Dist. Cuyahoga No. 109507, 2021-Ohio-578, for example, in which the panel generally concluded that the defendant's constitutional challenges to the indefinite term imposed under R.C. 2929.144 and 2929.14(A)(1)(a) or (A)(2)(a) are immediately appealable.

{¶ 94} However, there are limits to the type of arguments that can be addressed within the scope of a direct appeal. The general ripeness paradigm as recognized in *Wilburn* and other cases from this district dealing with the issue in the Reagan Tokes Law context, is necessarily limited to constitutional challenges against the sentence imposed or the validity of the statute authorizing the sentence. Our view here is not in conflict with *Wilburn* or with *Gamble* where we exhaustingly discussed ripeness of the imposition of a nonlife indefinite sentence. *See, e.g., Wilburn* at ¶ 10-18*; Gamble*, 8th Dist. Cuyahoga No. 109613, 2021-Ohio-1810, at ¶ 6-28. In this context, the defendants advanced claims challenging the validity of the sentencing structure underlying the final sentence imposed — hypothetically speaking, if the defendants' arguments were accepted, the result would be a remand for a new sentencing in which a "valid" sentence is imposed after the unconstitutional sentencing provision was severed from the Revised Code. It is that remedy that defines the boundaries of what claims are acceptable to bring in a direct appeal.

**{¶ 95}** The remedy to correct *Morrissey* problems is not to invalidate the sentence or declare the law to be unconstitutional, but instead the remedy is to require a constitutionally sound proceeding through which the defendant's sentence can be completed, whether by statute, rule, regulation, or a policy of the executive agency. *See Sloan*, 152 Ohio St.3d 32, 2017-Ohio-8708, 92 N.E.3d 836, at ¶ 6, citing *Scarberry*, 139 Ohio St.3d 111, 2014-Ohio-1587, 9 N.E.3d 1022, at ¶ 13 ("[t]he remedy for an alleged *Morrissey* due-process violation is a new hearing, not immediate release from confinement."). A conviction is not vacated because the hearing process itself lacked the constitutional safeguards — the remedy is to conduct a new hearing that is compliant with all constitutional requirements.

**{¶ 96}** At this stage of the proceedings, we are not tasked with reviewing the validity of the process by which ODRC carries out the defendant's sentence; we are solely reviewing the validity of the statutes that authorize the sentences already imposed. R.C. 2967.271's silence as to the detailed procedures for the hearing is not a basis to declare the Reagan Tokes Law unconstitutional. Although in time, individual inmates may challenge ODRC's policies that dictate the procedures ODRC must follow in carrying out the sentence under R.C. 2967.271, those challenges cannot be raised until the underlying sentence itself has been declared constitutionally sound and after the procedure is applied to deprive the offender of a constitutional right during the service of the sentence. It is a two-step process. In this district's previous decisions, *Wilburn* and *Gamble* in particular, the ripeness of

the claims advanced against the sentence was addressed, but no defendant attempted to challenge the procedures that ODRC uses in carrying out the sentence.

{¶ 97} For our en banc purposes, a defendant cannot extend the scope of the permissible argument challenging the sentence itself into one attacking the administrative rules or regulations, under R.C. 5120.01 parlance, establishing the procedures to maintain the offenders within the prison system — a proposition that was first implicated by the sua sponte discussion of the *Morrissey* requirements from *Delvallie*, *Sealey*, and *Daniel*, which necessarily implicates the legislature's authority to delegate rulemaking authority to ODRC to promulgate ODRC Policy 105-PBD-15.[8]  *See Wilkinson*, 545 U.S. at 220, 125 S.Ct. 2384, 162 L.Ed.2d 174. Those *Morrissey* claims solely depend on reviewing the administrative rules, policies, procedures, or protocols enacted by the executive branch, and are only cognizable through separate action, such as one for declaratory or habeas relief, since the claims depend on conditions or arguments that may or may not occur during the offender's prison service.  *Kepling*, 3d Dist. Hancock No. 5-20-23, 2020-Ohio-6888, at ¶ 15, fn. 3; *O'Neal*, 2020-Ohio-506, 146 N.E.3d 605, at ¶ 3 (10th Dist.). On this point, *O'Neal* is instructive.

---

[8] There has been much emphasis on the fact that the policy was not effective until March 2020, after the defendants filed their appeals.  Since the Reagan Tokes Law became effective in March 2019, the earliest ODRC would have been required to conduct a maximum-term hearing was two years after the enactment of the Reagan Tokes Law, the shortest possible minimum term under R.C. 2929.14(A).  This highlights the necessity of clarifying what is ripe for review in a direct appeal as contrasted against what must be raised through a postconviction proceeding challenging the executive agency's enforcement of its policies.

{¶ 98} In *O'Neal*, two inmates filed complaints seeking declaratory and injunctive relief to determine the validity of execution procedures ODRC drafted to enforce a sentence of death imposed by the trial court. *Id.* at ¶ 3. ODRC maintains an execution protocol setting forth comprehensive and detailed procedures to be utilized in carrying out court-ordered executions in Ohio. In other words, ODRC established procedural rules or policies governing its enforcement of a judicially imposed sentence. *Id.* at ¶ 2. Although *O'Neal* is not directly on point, the case illustrates the compartmentalization of the challenges against the imposition of the sentence (the defendants' claims in this en banc proceeding) from challenges advanced against the procedures the executive branch uses to enforce those sentences (the dissents' reliance on *Morrissey*). A defendant cannot challenge ODRC's enforcement of its rules, policies, procedures, or protocols, which are necessary to ODRC's enforcing a judicially imposed sentence, in a direct appeal of the criminal action. *See generally id.* Any such claims are not cognizable in the direct criminal appeal because those claims cannot arise until ODRC attempts to enforce its rules, policies, procedures, or protocols against the inmate. *Id.* Thus, the inmate's claims against the enforcement of ODRC rules, policies, procedures, or protocols are only cognizable in a separate action and are outside the scope of a direct appeal. *Id.*

{¶ 99} It is for this reason that we can summarily reject any claim that the direct appeals of the imposed nonlife, indefinite sentence are not ripe for review. A defendant has the right to appeal the constitutional validity of the imposed sentence

in a direct appeal. *Patrick*, 164 Ohio St.3d 309, 2020-Ohio-6803, 172 N.E.3d 952; *Wilburn,* 8th Dist. Cuyahoga No. 109507, 2021-Ohio-578, at ¶ 10-18. However, any due process claims against the executive branch's rulemaking or policy-making authority implicating the inmate's service of a sentence are not generally ripe for review in that direct appeal. *See generally, Kepling* at ¶ 15, fn. 3; *O'Neal.*

{¶ 100} In other words, the lack of expressly delineated procedures within R.C. 2967.271 is not a basis to declare the statutory section unconstitutional because the legislature delegated authority for ODRC to promulgate a rule and regulation expressly detailing the procedural requirements of the hearing through R.C. 5120.01. Whether those rules comply with *Morrissey* is an issue left for another day when properly advanced by the defendants.

{¶ 101} Further, and in light of *Delvallie*, 8th Dist. Cuyahoga No. 109315, 2021-Ohio-1809, in which the panel created a conflict in this district with *Gamble*, 8th Dist. Cuyahoga No. 109613, 2021-Ohio-1810, and *Wilburn* (both finding the constitutional challenges to the sentences imposed under R.C. 2929.144 and 2929.14(A)(1)(a) and (A)(2)(a) to be ripe for review in the direct appeal of the sentence imposed but without merit), we can reject the state's claim that a defendant's challenge as to the validity of the imposed sentence is not ripe for review. The constitutional implications of the defendants serving sentences imposed under the Reagan Tokes Law have been decided and further have been addressed by the state's appeal of the trial court's failure to impose an indefinite sentence in *Simmons*, 8th Dist. Cuyahoga No. 109476, 2021-Ohio-939. Since the

state was required to appeal the trial court's declaration that the statute was unconstitutional in *Simmons*, the issue is squarely before this court. Regardless, the ripeness issue with respect to challenging the imposition of the sentence was thoroughly analyzed in *Gamble* at ¶ 6-28 and need not be rehashed. The en banc question posed does not invalidate the ripeness analysis presented in *Gamble*.

{¶ 102} It suffices that seeking to invalidate a sentence that was imposed as being in violation of the Constitution differs from seeking to challenge the procedural rules for release determination under R.C. 2967.271. *Id.* Only the former may be challenged in the direct appeal. *Id.* The latter is not ripe for review until properly challenged in a writ or declaratory judgment action. *Id.*

V.    **Conclusion**

{¶ 103} Based on the foregoing, the defendants, including Delvallie, have not sufficiently met their burden to prove the whole of the Reagan Tokes Law to be unconstitutional beyond a reasonable doubt. The panel decisions *Delvallie, Daniel,* and *Sealey* are hereby vacated. The opinion issued in *Gamble* is not in conflict with the foregoing and, therefore, remains the decision in that case. As a result of the foregoing, Delvallie's sole assignment of error is overruled and his conviction is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's

conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
SEAN C. GALLAGHER, ADMINISTRATIVE JUDGE

FRANK D. CELEBREZZE, JR., and CORNELIUS J. O'SULLIVAN, JR., JJ., CONCUR;

EILEEN A. GALLAGHER, KATHLEEN ANN KEOUGH, and MICHELLE J. SHEEHAN, JJ., CONCUR WITH SECTIONS II. AND V. OF THE MAJORITY OPINION AND CONCUR IN JUDGMENT ONLY WITH THE REMAINDER;

MARY J. BOYLE, J., CONCURS IN JUDGMENT ONLY (WITH SEPARATE OPINION);

LISA B. FORBES, J., DISSENTS (WITH SEPARATE OPINION); EILEEN T. GALLAGHER, EMANUELLA D. GROVES, MARY EILEEN KILBANE, and ANITA LASTER MAYS, JJ., CONCUR;

ANITA LASTER MAYS, J., DISSENTS IN PART AND CONCURS IN PART (WITH SEPARATE OPINION); EMANUELLA D. GROVES and MARY EILEEN KILBANE, JJ., CONCUR.

MARY J. BOYLE, J., CONCURRING IN JUDGMENT ONLY:

{¶ 104} Consistent with my dissenting opinion in the original panel decision in *State v. Gamble,* 2021-Ohio-1810, 173 N.E.3d 132 (8th Dist.) and as several of our sister districts have held, I maintain that challenges in a direct appeal under the

Reagan Tokes Act[9] are not yet ripe for review. I would therefore not reach the en banc question of constitutionality.

{¶ 105} "[C]onstitutional questions are not ripe for review until the necessity for a decision arises on the record before the court." *State v. Spikes*, 129 Ohio App.3d 142, 147, 717 N.E.2d 386 (11th Dist.1998), citing *Christensen v. Bd. of Commrs. on Grievances & Discipline*, 61 Ohio St.3d 534, 535, 575 N.E.2d 790 (1991). In order to determine whether an issue is ripe for judicial review, "'the court must weigh (1) the likelihood that the alleged future harm will ever occur, (2) the likelihood that delayed review will cause hardship to the parties, and (3) whether the factual record is sufficiently developed to provide fair adjudication.'" *Gamble* at ¶ 20, quoting *Stewart v. Stewart*, 134 Ohio App.3d 556, 558, 731 N.E.2d 743 (4th Dist.1999), citing *Ohio Forestry Assn., Inc. v. Sierra Club*, 523 U.S. 726, 118 S.Ct. 1665, 140 L.Ed.2d 921 (1998).[10]

{¶ 106} In *State v. McCann*, 8th Dist. Cuyahoga No. 85657, 2006-Ohio-171, the defendant argued that because the parole board had the power under R.C. 2967.28 to extend his sentence by up to an additional five years for violation of postrelease control, the statute was unconstitutional. We concluded that because the defendant in *McCann* was not currently the subject of such action by the parole board, the issue was not yet ripe for review. *Id.* at ¶ 6.

---

[9] In its en banc brief, the state correctly notes that the constitutional challenge is more accurately framed as a challenge to R.C. 2967.21 rather than the entire Reagan Tokes Act.

[10] Throughout the appeals before this court, the state has maintained its position that issues under the Reagan Tokes Act are not ripe in a defendant's direct appeal.

{¶ 107} Several of our sister districts have relied upon our decision in *McCann,* in determining that challenges to sentencing under the Reagan Tokes Act are not ripe for review until a defendant has been held past his or her minimum sentence. *See, e.g., State v. Halfhill*, 4th Dist. Meigs No. 20CA7, 2021-Ohio-177, ¶ 20; *State v. Downard*, 5th Dist. Muskingum No. CT2019-0079, 2020-Ohio-4227; *State v. Manion*, 5th Dist. Tuscarawas No. 2020 AP 03 0009, 2020-Ohio-4230; *State v. Kibler*, 5th Dist. Muskingum No. CT2020-0026, 2020-Ohio-4631; *State v. Maddox*, 6th Dist. Lucas No. CL-19-1253, 2020-Ohio-4702.

{¶ 108} Other districts have not addressed the ripeness issue, but have implicitly determined that the matter was ripe by proceeding to the merits of the appeal. *See, e.g., State v. Henderson*, 12th Dist. Warren No. CA2020-11-072, 2021-Ohio-3564; *State v. Hacker,* 2020-Ohio-5048, 161 N.E.3d 112 (3d Dist.); *State v. Keith*, 2d Dist. Montgomery No. 28805, 2021-Ohio-518.

{¶ 109} The Supreme Court of Ohio has certified a conflict among the districts on the following question:

> Is the constitutionality of the provisions of the Reagan Tokes Law, which allow the Department of Rehabilitation and Correctio[n] to administratively extend a criminal defendant's prison term beyond the presumptive minimum term, ripe for review on direct appeal from sentencing, or only after the defendant has served the minimum term and been subject to extension by application of the Act?

*See State v. Maddox*, 160 Ohio St.3d 1505, 2020-Ohio-6913, 159 N.E.3d 1150.

{¶ 110} Oral arguments in *Maddox* were held on June 29, 2021, and a decision has not yet been released. Pending the decision in *Maddox*, the Supreme

Court has held consideration of other cases that were appealed on Reagan Tokes grounds,[11] to wit: *State v. Singh,* 165 Ohio St.3d 1424, 2021-Ohio-3730, 175 N.E.3d 568; *State v. Moran,* 164 Ohio St.3d 1440, 2021-Ohio-3233, 173 N.E.3d 1230; *State v. Stenson*, 164 Ohio St.3d 1455, 2021-Ohio-3438, 174 N.E.3d 801; *State v. Slye,* 164 Ohio St.3d 1419, 2021-Ohio-2923, 172 N.E.3d 1041; *State v. Hunter,* 163 Ohio St.3d 1515, 2021-Ohio-2615, 171 N.E.3d 340; *State v. Hodgkin,* 164 Ohio St.3d 1403, 2021-Ohio-2742, 172 N.E.3d 165; *State v. Mills,* 163 Ohio St.3d 1515, 2021-Ohio-2615, 171 N.E.3d 339; *State v. Stevens,* 163 Ohio St.3d 1493, 2021-Ohio-2270, 169 N.E.3d 1274; *State v. Sinkhorn,* 164 Ohio St.3d 1419, 2021-Ohio-2923, 172 N.E.3d 1042; *State v. Noble,* 163 Ohio St.3d 1493, 2021-Ohio-2270, 169 N.E.3d 1286; *State v. Crawford,* 163 Ohio St.3d 1490, 2021-Ohio-2097, 169 N.E.3d 1267; *State v. Simmons,* 163 Ohio St.3d 1492, 2021-Ohio-2270, 169 N.E.3d 1273; *State v. Doughty,* 163 Ohio St.3d 1492, 2021-Ohio-2270, 169 N.E.3d 1284; *State v. Bothuel,* 163 Ohio St.3d 1490, 2021-Ohio-2097, 169 N.E.3d 1267; *State v. Ludwig,* 163 Ohio St.3d 1439, 2021-Ohio-1896, 168 N.E.3d 1197; *State v. Beatty,* 163 Ohio St.3d 1439, 2021-Ohio-1896, 168 N.E.3d 1196; *State v. Jones,* 162 Ohio St.3d 1421, 2021-Ohio-1201, 166 N.E.3d 10; *State v. Stone,* 162 Ohio St.3d 1420, 2021-Ohio-1201, 166 N.E.3d 9; *State v. Ferguson,* 162 Ohio St.3d 1410, 2021-Ohio-961, 165 N.E.3d 333; *State v. Dames,* 162 Ohio St.3d 1410, 2021-Ohio-961, 165 N.E.3d 333; *State v. Wolfe,* 161 Ohio St.3d 1474, 2021-Ohio-717, 164 N.E.3d 482; *State v. Cochran,* 161 Ohio

---

[11] As of November 4, 2021.

St.3d 1450, 2021-Ohio-534, 163 N.E.3d 592; *State v. Hacker,* 161 Ohio St.3d 1449, 2021-Ohio-534, 163 N.E.3d 585.

{¶ 111} Returning to the conflict cases before us, none of the three factors used to determine ripeness weighs in favor of the claims of a defendant who has not yet been subject to the provisions of Reagan Tokes. First, the likelihood of harm occurring is completely unknown at this time. It is possible that none of the conditions in R.C. 2967.271(C) will occur, and there may never be a question as to whether the sentence would be extended beyond the minimum term. At the time of a defendant's direct appeal of sentencing, there is only the potential for a defendant to be subjected to the maximum prison term. "Generally, a claim is not ripe if the claim rests upon 'future events that may not occur as anticipated, or may not occur at all.'" *McLaughlin v. McLaughlin*, 4th Dist. Athens No. 06CA14, 2007-Ohio-260, ¶ 12, quoting *Texas v. United States*, 523 U.S. 296, 300, 118 S.Ct. 1257, 140 L.Ed.2d 406 (1998).

{¶ 112} Moreover, while a party is not required to await the consummation of threatened injury to obtain preventive relief, the injury must be "'certainly impending.'" *Thomas v. Union Carbide Agricultural Prods. Co.*, 473 U.S. 568, 581-582, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985), quoting *Regional Rail Reorganization Act Cases*, 419 U.S. 102, 143, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974), citing *Pennsylvania v. West Virginia*, 262 U.S. 553, 593, 43 S.Ct. 658, 67 L.Ed. 1117 (1923). "'The ripeness doctrine is motivated in part by the desire "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in

abstract disagreements over administrative policies * * *." *Abbott Labs. v. Gardner* (1967), 387 U.S. 136, 148, 87 S.Ct. 1507, 18 L.Ed.2d 681.'" *State v. Freer*, 8th Dist. Cuyahoga No. 89392, 2008-Ohio-1257, ¶ 29, quoting *State ex rel. Elyria Foundry Co. v. Indus. Comm.*, 82 Ohio St.3d 88, 89, 694 N.E.2d 459 (1998).

{¶ 113} Like the defendant in *McCann*, *supra,* criminal defendants challenging the provisions of Reagan Tokes raise issues with the process that *may* extend their sentence.  In *McCann*, the defendant argued that the postrelease control statute violated his right to a jury trial by allowing the parole board to extend his sentence.  A challenge to Reagan Tokes is in the same vein — it is the ODRC that will decide whether the defendant must serve the maximum sentence rather than only the minimum sentence, and it is the process through which this determination is made by the ODRC that defendants claim is unconstitutional.

{¶ 114} The ODRC is permitted to rebut the presumption of a defendant's minimum sentence and keep a defendant in prison for an additional period not to exceed the maximum term imposed by the sentencing judge.  R.C. 2967.271(C).  The statute provides that the presumption may be rebutted if the ODRC determines at a hearing any of the following:

> (1) Regardless of the security level in which the offender is classified at the time of the hearing, both of the following apply:
>
> (a) During the offender's incarceration, the offender committed institutional rule infractions that involved compromising the security of a state correctional institution, compromising the safety of the staff of a state correctional institution or its inmates, or physical harm or the threat of physical harm to the staff of a state correctional institution or its inmates, or committed a violation of law that was not prosecuted, and

the infractions or violations demonstrate that the offender has not been rehabilitated.

(b) The offender's behavior while incarcerated, including, but not limited to the infractions and violations specified in division (C)(1)(a) of this section, demonstrate that the offender continues to pose a threat to society.

(2) Regardless of the security level in which the offender is classified at the time of the hearing, the offender has been placed by the department in extended restrictive housing at any time within the year preceding the date of the hearing.

(3) At the time of the hearing, the offender is classified by the department as a security level three, four, or five, or at a higher security level.

{¶ 115} When reviewing appeals from sentencing, it is impossible for us to know whether any of the above conditions will occur and rebut the presumption of the minimum sentence. Thus, a criminal defendant raising challenges to Reagan Tokes in his or her direct appeal is not currently subject to any action by the ODRC related to extending his or her sentence, and he or she may very well never be. This is the very epitome of a failure to demonstrate ripeness.

{¶ 116} The Third District has come to a similar conclusion regarding due process challenges to Reagan Tokes:

> [A]t this point, we cannot even determine whether the ODRC will ever have occasion to hold a hearing to determine whether Kepling should be held beyond his presumptive release date. Similarly, we cannot now determine whether the ODRC will provide Kepling with adequate notice and an opportunity to be heard if a hearing to hold Kepling beyond his presumptive release date is ever held. Further, as the appellant notes in his brief, we also cannot now know what administrative protections will be in place in the future to guide the ODRC.

[This argument] "rests on contingent future events that may not occur as anticipated or may never occur at all." [*State v.*] *Loving,* [180 Ohio App.3d 424, 2009-Ohio-15, 905 N.E.2d 1234, ¶ 4 (10th Dist.)]. For this reason, we conclude that the arguments that Kepling raises on appeal that do not raise a facial challenge to the Reagan Tokes Law are not yet ripe for consideration. * * *

*State v. Kepling*, 3d Dist. Hancock No. 5-20-23, 2020-Ohio-6888, ¶ 14-15. The *Kepling* Court declined to consider the due process constitutional arguments on this basis. *See also State v. Crawford*, 3d Dist. Henry No. 7-20-05, 2021-Ohio-547, ¶ 15 ("This argument does not address a penalty that Crawford has already received but is based on contingent events that may or may not arise in the future. Thus, this issue is not yet ripe for our consideration.").

{¶ 117} The Eleventh District has also determined that challenges to Reagan Tokes were not ripe for review, likening them to challenges to Ohio's former "bad time" laws and to optional postrelease control. On appeal from sentencing, these challenges were held not to be ripe, because the offender only had the "'*potential* to be subjected to extended prison time or postrelease control.'" (Emphasis sic.) *State v. Lavean*, 11th Dist. Lake No. 2020-L-045, 2021-Ohio-1456, ¶ 10, quoting *State v. Spikes*, 129 Ohio App.3d 142, 145, 717 N.E.2d 386 (11th Dist.1998).

{¶ 118} This court has recently decided the case of *State v. Sealey,* 2021-Ohio-1949, 173 N.E.3d 894 (8th Dist.). In *Sealey,* the trial court refused to sentence the defendant under Reagan Tokes, finding it to be unconstitutional. The trial court did not provide any explanation as to what aspect of the law it had determined to be

unconstitutional. The state appealed, and the *Sealey* panel affirmed, holding Reagan Tokes to be unconstitutional on due process grounds.

{¶ 119} While *Sealey* did not specifically address the question of ripeness, *Sealey* did present a ripe issue. Because the trial court did not sentence the defendant to the minimum and maximum sentence provided for by Reagan Tokes, the issue was already present and justiciable, and there were no contingent events that had to occur prior to review. *Sealey* can therefore be distinguished from the instant cases where defendants were properly sentenced to minimum and maximum sentences under Reagan Tokes and raise issues with the process that triggers the maximum sentence — a process that is contingent upon certain factors and may never occur in many cases.

{¶ 120} The second factor in analyzing ripeness asks whether delayed review will cause hardship to the parties. This question may also be answered in the negative because, as noted by the Fourth District, a defendant subject to the provisions of Reagan Tokes may have his or her claims addressed via a writ for habeas corpus:

> [A] petition for a writ of habeas corpus was the procedure by which the defendants in Bray challenged the constitutionality of the "bad time" statute, R.C. 2967.11. The defendants were sentenced, served their prison terms, and then were sanctioned with bad time penalties that were added to the maximum sentence imposed by the trial court. Each defendant filed a petition for a writ of habeas corpus, alleging that they were unlawfully restrained because R.C. 2967.11 was unconstitutional. Similarly, in *Woods v. Telb*, 89 Ohio St.3d 504, 2000-Ohio-171, 733 N.E.2d 1103, an inmate, Woods, challenged the post-release control statute, R.C. 2967.28, on the grounds that it violated the separation of powers doctrine and due process. Woods was sentenced to ten months

in prison and then placed on post-release control for three years. After a number of violations, Woods was sanctioned to serve one hundred and eighty days in a community based correctional facility. Woods filed a petition for a writ of habeas corpus arguing that the post-release control statute was unconstitutional. The Supreme Court of Ohio held that the post-release control statute was constitutional. As in *Bray*, the Court did not specifically discuss the necessity of the use of a petition for a writ of habeas corpus to challenge the constitutionality of the post-release control statute, the Court ruled on the merits, finding the statute constitutional. Thus, as with *Bray* and as recognized by the Fifth District in *Downard* and *Minion*, we find that a habeas corpus petition is the appropriate method for Ramey to challenge the constitutionality of the Reagan Tokes Law when — if ever — the ODRC holds him beyond the minimum sentence.

*State v. Ramey*, 4th Dist. Washington Nos. 20CA1 and 20CA2, 2020-Ohio-6733, ¶ 21.

{¶ 121} With regard to the third ripeness factor, the factual record in direct appeals raising Reagan Tokes constitutional challenges is not sufficiently developed for us to provide fair adjudication. Because the defendants in the conflict cases have not been subject to any determination by the ODRC, there is nothing in the record that would allow us to assess whether the process of such determination violates a defendant's constitutional rights.

{¶ 122} Finally, while Delvallie argues that the ripeness argument cannot survive the Supreme Court of Ohio decisions in *Harper, Henderson,* and *Hudson*, these decisions, along with this court's recent en banc opinion in *State v. Stansell*, 8th Dist. Cuyahoga No. 109023, 2021-Ohio-2036, also do not prevent a defendant from raising a Reagan Tokes challenge after his or her direct appeal. The above cases involved challenges to the sentence imposed and the obligation to raise any errors

in such imposition at the direct appeal. But a defendant's claimed Reagan Tokes constitutional violations do not arise from the *imposition* of the sentence. When sentenced pursuant to Reagan Tokes, a defendant will have been properly sentenced to both a minimum and maximum term under the statute. Any claimed constitutional violations relate solely to the process by which the ODRC may make the determination of whether to keep him beyond the minimum sentence and trigger the maximum sentence. A defendant may raise issues with the ODRC process of triggering the maximum sentence at the time such actions actually occur and not before, when the challenges are not yet ripe.

{¶ 123} Thus, in accordance with the law of several of our sister districts, I maintain that this issue is not ripe for judicial review. However, because the Reagan Tokes Act decisions accepted by this court for en banc review present a clear conflict, I am duty-bound under App.R. 26(A)(2) to consider the issues presented. I resolve that conflict in favor of finding the Reagan Tokes Act to be constitutional and concur in judgment only.

LISA B. FORBES, J., DISSENTING WITH SEPARATE OPINION:

{¶ 124} I dissent from the majority because the presumption of release established in R.C. 2967.271(B) and (C) creates a liberty interest of which inmates may not be deprived without due process of law, but R.C. 2967.271 does not contain

any due process safeguards. Consequently, I would find R.C. 2967.271(C) and (D) unconstitutional.

## I.     Standard of Review

{¶ 125} The constitutionality of a statute presents questions of law, which are "reviewed de novo, independently and without deference to the trial court's decision." *Andreyko v. Cincinnati*, 153 Ohio App.3d 108, 112, 2003-Ohio-2759, 791 N.E.2d 1025 (1st Dist.). Our review must be conducted in light of the notion that statutes "enjoy a strong presumption of constitutionality." *State v. Romage*, 138 Ohio St.3d 390, 2014-Ohio-783, 7 N.E.3d 1156, ¶ 7.

{¶ 126} In the instant case, the defendant brings a facial challenge to the Reagan Tokes Law and the trial court's imposition of his prison sentence under it.

> A party may challenge a statute as unconstitutional on its face or as applied to a particular set of facts. A facial challenge to a statute is the most difficult to bring successfully because the challenger must establish that there exists no set of circumstances under which the statute would be valid. The fact that a statute might operate unconstitutionally under some plausible set of circumstances is insufficient to render it wholly invalid.

(Citations omitted.) *Harrold v. Collier*, 107 Ohio St.3d 44, 2005-Ohio-5334, 836 N.E.2d 1165, ¶ 37.

{¶ 127} The Ohio Supreme Court has held that "[w]hen determining whether a law is facially invalid, a court must be careful not to exceed the statute's actual language and speculate about hypothetical or imaginary cases." *Wymsylo v. Bartec, Inc.*, 132 Ohio St.3d 167, 2012-Ohio-2187, 970 N.E.2d 898, ¶ 21, citing *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449-450, 128

S.Ct. 1184, 170 L.Ed.2d 151 (2008). Furthermore, "[r]eference to extrinsic facts is not required to resolve a facial challenge." *Wymsylo* at ¶ 21.

## II. Constitutionality of the Reagan Tokes Law

{¶ 128} The Reagan Tokes Law sets forth an indefinite sentencing scheme for certain qualifying first- and second-degree felonies committed on or after March 22, 2019. R.C. 2967.271. Under this scheme, courts sentence a defendant to a minimum and maximum prison term, with a presumption that the defendant "shall be released from service of the sentence on the expiration of the offender's minimum prison term * * *." R.C. 2967.271(B). This presumption that the "offender shall be released" may be rebutted by the Ohio Department of Rehabilitation and Correction ("DRC") "only if the department determines, at a hearing, that one or more of the following applies":

> (1) Regardless of the security level in which the offender is classified at the time of the hearing, both of the following apply:
>
> (a) During the offender's incarceration, the offender committed institutional rule infractions that involved compromising the security of a state correctional institution, compromising the safety of the staff of a state correctional institution or its inmates, or physical harm or the threat of physical harm to the staff of a state correctional institution or its inmates, or committed a violation of law that was not prosecuted, and the infractions or violations demonstrate that the offender has not been rehabilitated.
>
> (b) The offender's behavior while incarcerated, including, but not limited to the infractions and violations specified in division (C)(1)(a) of this section, demonstrate that the offender continues to pose a threat to society.
>
> (2) Regardless of the security level in which the offender is classified at the time of the hearing, the offender has been placed by the department

in extended restrictive housing at any time within the year preceding the date of the hearing.

(3) At the time of the hearing, the offender is classified by the department as a security level three, four, or five, or at a higher security level.

R.C. 2967.271(C).

{¶ 129} In other words, an inmate will be released at the end of his or her minimum prison term ("presumptive release date") unless the DRC takes action.

## A. Due Process

{¶ 130} Under the Fourteenth Amendment to the United States Constitution, the states shall not "deprive any person of life, liberty, or property, without due process of law." *See also* Fifth Amendment to the United States Constitution; Ohio Constitution Article I, Section 16. The United States Supreme Court has recognized that "the convicted felon does not forfeit all constitutional protections by reason of his conviction and confinement in prison. He retains a variety of important rights that the courts must be alert to protect." *Meachum v. Fano*, 427 U.S. 215, 225, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976). "Inmates retain, for example, the right to be free from racial discrimination, * * * the right to due process, * * * and * * * certain protections of the First Amendment * * *." *Shaw v. Murphy*, 532 U.S. 223, 228-229, 121 S.Ct. 1475, 149 L.Ed.2d 420 (2001).

{¶ 131} The liberty interests protected under the Due Process Clause become limited to "the most basic" when the claimant is a prison inmate. *Hewitt v. Helms*, 459 U.S. 460, 467, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983) ("We have repeatedly said both that prison officials have broad administrative and discretionary authority over

the institutions they manage and that lawfully incarcerated persons retain only a narrow range of protected liberty interests.").

{¶ 132} It is with that context in mind that I turn to the United States Supreme Court's two-step analysis for constitutional challenges based on due process violations: "We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219, 131 S.Ct. 859, 178 L.Ed.2d 732 (2011).

### B. Is There a Liberty Interest in the Reagan Tokes Law?

{¶ 133} I recognize that the lead opinion assumes that R.C. 2967.271(B) creates a liberty interest. Because of the significance of the implications that flow from the liberty interest, I fully analyze the issue and conclude that R.C. 2967.271(B) does create a liberty interest.

{¶ 134} A "liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty'" or "from an expectation or interest created by state laws or policies * * *." *Wilkinson v. Austin,* 545 U.S. 209, 221, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005), citing *Vitek v. Jones*, 445 U.S. 480, 493-494, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980) (liberty interest in avoiding involuntary psychiatric treatment) and *Wolff v. McDonnell*, 418 U.S. 539, 555-556, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (liberty interest in avoiding the withdrawal of state-created system of good-time credits). To analyze whether there is a liberty interest

in the Reagan Tokes Law, I look first to United States Supreme Court authority, then to Ohio law for guidance.

{¶ 135} In *Wolff*, prison inmates in Nebraska challenged a state statute that authorized each penal facility to reduce an inmate's "good-time credit" if the inmate engaged in "flagrant or serious misconduct." *Id.* at 545-546. The United States Supreme Court found that the state of Nebraska "itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior." *Id.* at 557. Therefore, the court held, "the prisoner's interest has real substance and is sufficiently embraced within the Fourteenth Amendment 'liberty' to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated." *Id.*

{¶ 136} In a different setting, a California parole statute created a liberty interest by providing that the prison board "'shall set a release date unless it determines that * * * consideration of the public safety requires a more lengthy period of incarceration.'" *Swarthout*, 562 U.S. at 216-217, 131 S.Ct. 859, 178 L.Ed.2d 732, quoting Cal. Penal Code Ann. 3041(b). When a state "creates a liberty interest, the Due Process Clause requires fair procedures for its vindication — and * * * courts will review the application of those constitutionally required procedures." *Swarthout* at 220.

{¶ 137} Further guidance is found in *Wilkinson*. The United States Supreme Court made clear that inmates may have "a protected, state-created liberty interest

in avoiding restrictive conditions of confinement" depending not on the particular language of the regulations regarding the conditions "but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'" *Wilkinson*, 545 U.S. at 223, 125 S.Ct. 2384, 162 L.Ed.2d 174, quoting *Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). The *Sandin* Court stated that "[t]he time has come to return to the due process principles" focusing on "the nature of the deprivation" rather than based on "the language of a particular regulation * * *." *Id.* at 481-483.

{¶ 138} As courts throughout Ohio have reviewed the constitutionality of the Reagan Tokes Law, many look to case law dealing with parole revocation and parole eligibility for guidance. Compare *State v. Guyton,* 12th Dist. Butler No. CA2019-12-203, 2020-Ohio-3837, ¶ 17 ("The hearings conducted by the [DRC] under R.C. 2967.271(C) are analogous to parole revocation proceedings, probation revocation proceedings, and postrelease control violation hearings * * *") with *State v. Leet,* 2d Dist. Montgomery No. 28670, 2020-Ohio-4592, ¶ 17 ("requiring a defendant to remain in prison beyond the presumptive minimum term is akin to the decision to grant or deny parole * * *" rather than parole revocation).

{¶ 139} The distinction between parole eligibility and parole revocation is significant when discussing due process because the liberty interest in parole revocation — which entails taking someone's freedom away — is much greater than the liberty interest in parole eligibility — which typically entails the hope or anticipation of freedom. *See Greenholtz v. Inmates of Nebraska Penal & Corr.*

*Complex,* 442 U.S. 1, 9, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979) ("There is a crucial distinction between being deprived of a liberty one has, as in [revocation of] parole, and being denied a conditional liberty that one desires[,]" as in "discretionary parole release from confinement" or parole eligibility.). *See also Wolff,* U.S. 539 at 560, 94 S.Ct. 2963, 41 L.Ed.2d 935 ("Simply put, revocation proceedings determine whether the parolee will be free or in prison, a matter of obvious great moment to him.").

{¶ 140} In Ohio, parole revocation, unlike parole eligibility, "implicates a liberty interest which cannot be denied without certain procedural protections." *State ex rel. Jackson v. McFaul,* 73 Ohio St.3d 185, 186, 652 N.E.2d 746 (1995). *See also* R.C. 2967.15(B). However, there is no presumption of release on parole in Ohio, thus there is no liberty interest at stake in parole eligibility proceedings. Ohio Adm.Code 5120:1-1-07(A) states that "[a]n inmate *may* be released on or about the date of his eligibility for release, unless the parole board * * * determines that he should not be released on such date for" various reasons. (Emphasis added.) Ohio Adm.Code 5120:1-1-07(C) states that "[t]he consideration of any single factor, or any group of factors, shall not create a presumption of release on parole * * *." This court has held that a "prisoner who is denied parole is not thereby deprived of 'liberty' if state law makes the parole decision discretionary. Under R.C. 2967.03, the parole decision is discretionary." *State v. Ferguson,* 8th Dist. Cuyahoga No. 82984, 2004-Ohio-487, ¶ 9-10. *Compare Swarthout,* 562 U.S. at 216-217, 131 S.Ct. 859, 178 L.Ed.2d 732, quoting Cal. Penal Code Ann. 3041(b) (the prison board '"shall set a

release date unless it determines that * * * consideration of the public safety requires a more lengthy period of incarceration.'").

{¶ 141} Unlike Ohio's parole eligibility proceedings, the Reagan Tokes Law includes an express presumption of release: "When an offender is sentenced to a nonlife felony indefinite prison term, there shall be a presumption that the person shall be released from service of the sentence on the expiration of the offender's minimum prison term * * *." R.C. 2967.271(B). That presumption of release is repeated in R.C. 2967.271(C): "Unless the [DRC] rebuts the presumption, the offender shall be released from service of the sentence on the expiration of the offender's minimum prison term* * *." A liberty interest may arise "from an expectation or interest created by state laws or policies." *Wolff* at 557. The plain language of the Reagan Tokes Law creates an expectation of release.

{¶ 142} I would find that, like the Nebraska statute in *Wolff* and the California statute in *Swarthout*, the Reagan Tokes Law creates a liberty interest. I would also find that, like the nature of the deprivation found in *Wilkinson* and *Sandin*, Ohio prison inmates have an inherent liberty interest in being released from confinement on their presumptive release date under the Reagan Tokes Law. I agree with the Twelfth District Court of Appeals' opinion in *Guyton*, 12th Dist. Butler No. CA2019-12-203, 2020-Ohio-3837, that the presumptive release date mandate is more akin to parole revocation proceedings than parole eligibility proceedings. The liberty interest at stake here is the inmate's freedom.

### C.  What Process is Due?

**{¶ 143}** Concluding — not assuming — the creation of a liberty interest, I turn my attention to what process is due in light of that liberty interest.  "Our courts have long recognized that due process requires both notice and an opportunity to be heard."  *In re Thompkins*, 115 Ohio St.3d 409, 2007-Ohio-5238, 875 N.E.2d 582, ¶ 13.  "[T]he fundamental requisite of due process of law is the opportunity to be heard in a meaningful time and in a meaningful manner."  *Woods v. Telb*, 89 Ohio St.3d 504, 514, 733 N.E.2d 1103 (2000).  Additionally, in the criminal context, the accused is entitled to fair notice of what conduct is "punishable."  *State v. Philpotts*, 2019-Ohio-2911, 132 N.E.3d 743 (8th Dist.).  "This refers to the principle that due process requires criminal statutes to be written clearly so that individuals are provided with a fair warning that a certain conduct is within the statute's prohibition."  *Id.* at ¶ 44.

**{¶ 144}** "It is axiomatic that due process 'is flexible and calls for such procedural protections as the particular situation demands.'"  *Greenholtz*, 442 U.S. at 12, 99 S.Ct. 2100, 60 L.Ed.2d 668, quoting *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).  In considering what process is due to protect the liberty interest created by the Reagan Tokes Law, I am mindful that the United States Supreme Court recognized that:

> Lawful imprisonment necessarily makes unavailable many rights and privileges of the ordinary citizen, a "retraction justified by the considerations underlying our penal system." *Price v. Johnston*, 334 US. 266, 285, 68 S.Ct. 1049, 92 L.Ed. 1356 (1948).  But though his rights may be diminished by the needs and exigencies of the institutional environment, a prisoner is not wholly stripped of

constitutional protections when he is imprisoned for crime. There is no iron curtain drawn between the Constitution and the prisons of this country. * * * Prisoners may * * * claim the protections of the Due Process Clause. They may not be deprived of life, liberty, or property without due process of law.

*Wolff*, 418 U.S. at 555-556, 94 S.Ct. 2963, 41 L.Ed.2d 935.

{¶ 145} To analyze what process is due, the United States Supreme Court has provided a framework requiring consideration of three factors:

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). *See also Wilkinson*, 545 U.S. at 224-225, 125 S.Ct. 2384, 162 L.Ed.2d 174.

{¶ 146} The *Mathews* factors should be balanced. In removing an individual from free society for a parole violation, as in *Morrissey*, or revoking good-time credits based on some specific serious misbehavior, as in *Wolff*, "more formal, adversary-type procedures" might be useful; on the other hand, "where the inquiry draws more on the experience of prison administrators, and where the State's interest implicates the safety" of others, more informal, nonadversarial procedures are more appropriate. *Wilkinson* at 229.

{¶ 147} Applying the *Mathews* factors to the Reagan Tokes Law, I would find that the private interest is an inmate's freedom; the risk of erroneous deprivation is high, even taking into consideration the diminished protection afforded a prison

inmate; and the government's interest in running prisons is strong and its resources are scarce.

{¶ 148} As explained by the *Morrissey* Court "the minimum requirements of due process" include the following for parole revocation proceedings:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

*Morrissey*, 408 U.S. at 489, 92 S.Ct. 2593, 33 L.Ed.2d 484. The *Morrissey* due process safeguards have been applied to proceedings other than parole revocation. *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) (applying *Morrissey's* due process requirements regarding parole revocation hearings to probation violation hearings); *Woods*, 89 Ohio St.3d 504, 733 N.E.2d 1103 (applying *Morrissey's* due process requirements to postrelease control violation hearings).

{¶ 149} In the context of prison discipline, the *Wolff* Court held that inmates facing a reduction of their good-time credit must be provided "advance written notice of the claimed violation and a written statement of the factfinders as to the evidence relied upon and the reasons for the disciplinary action taken." *Wolff*, 418 U.S. at 563, 94 S.Ct. 2963, 41 L.Ed.2d 935. Specifically, the court held that "written notice of the charges must be given to the disciplinary-action defendant in order to inform him of the charges and to enable him to marshal the facts and prepare a

defense." *Id.* at 564. Additionally, "the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Id.* at 566. The *Wolff* Court concluded that "some, but not all, of the procedures specified in *Morrissey* * * * must accompany the deprivation of good time by state prison authorities," although the procedures are "not graven in stone." *Id.* at 571-572.

{¶ 150} In the context of a statutorily created liberty interest in parole, the *Swarthout* Court found the due process "procedures required are minimal." *Swarthout*, 562 U.S. at 220, 131 S.Ct. 859, 178 L.Ed.2d 732. The prisoners at issue received adequate process when "[t]hey were allowed to speak at their parole hearings and to contest the evidence against them, were afforded access to their records in advance, and were notified as to the reasons why parole was denied." *Id.* at 221.

### D. Does the Reagan Tokes Law Satisfy the Requirements of Due Process?

{¶ 151} Next, I turn to whether the procedures identified in R.C. 2967.271 for rebutting the presumptive release date and extending the prison term are sufficient to protect inmates' due process rights in light of the guidance as discussed in this opinion.

{¶ 152} For the reasons that follow, I disagree with the holdings in both *Wilburn* and *Simmons*, where this court determined that the Reagan Tokes Law provides adequate due process safeguards, including "notice and an opportunity to

be heard." *Simmons*, 8th Dist. Cuyahoga No. 109476, 2021-Ohio-939, at ¶ 21, citing *Wilburn*, 8th Dist. Cuyahoga No. 109507, 2021-Ohio-578, at ¶ 36. In *Wilburn* and *Simmons*, this court supported its conclusion by referring to R.C. 2967.271(C)(1), (2), and (3); R.C. 2967.271(E); and various provisions of the Ohio Administrative Code, none of which provide any due process protections to defendants in the rebuttable presumption hearings. *See Wilburn* at ¶ 31-36, and *Simmons* at ¶ 21. The lead opinion relies on an internal policy that became effective approximately 16 months after Delvallie's sentencing. This policy is similarly insufficient to save R.C. 2967.271(C) and (D) in this facial challenge to the statute, as will be discussed in response to the lead opinion.

{¶ 153} R.C. 2967.271(C) does not set forth any procedures for the rebuttable presumption hearing, and most importantly, it does not require that the hearing be meaningful. The only guidance the statute gives is (a) the DRC may rebut the presumption of release, and (b) the DRC decides whether it has done so. *See generally Columbus-Suburban Coach Lines v. Pub. Utils. Comm.*, 20 Ohio St.2d 125, 127, 254 N.E.2d 8 (1969) ("In determining legislative intent it is the duty of this court to give effect to the words used, not to delete words used or insert words not used.").

{¶ 154} Subsections (1), (2), and (3) of R.C. 2967.271(C) set forth behavior and circumstances that may serve as the basis for the DRC to rebut the presumption of release. For example, the DRC may rely on certain prison rule infractions committed by the offender while incarcerated as part of the rebuttable presumption

hearing. Ohio Adm.Code 5120-9-06 defines DRC "disciplinary violations * * * of institutional or departmental rules and regulations," and Ohio Adm.Code 5120-9-08 and 5120-9-10 set forth disciplinary procedures for adjudicating prison rule infractions and restrictive housing assignments. However, how — if at all — those administrative rules overlap with or apply to the Reagan Tokes Law rebuttable presumption hearing is wholly unexplained by the Reagan Tokes Law. *See* R.C. 2967.271(C)(1)(a). Importantly, nothing in R.C. 2967.271(C) limits the DRC's consideration of an inmate's prison rule infractions to infractions that have gone through the administrative process outlined in the Ohio Administrative Code.

{¶ 155} Moreover, the DRC may rebut the presumption of release based on the inmate having "committed a violation of law that was not prosecuted." R.C. 2967.271(C)(1)(a). The statute does not provide that the inmate be notified that he or she is being accused of committing a violation of law that has not been prosecuted or be present at the rebuttable presumption hearing, much less that he or she be given an opportunity to defend against the allegation of such unprosecuted crime.

{¶ 156} Furthermore, if a rule infraction or an unprosecuted crime is relied on by the DRC to rebut the presumption of release, the DRC must also establish that the "offender has not been rehabilitated" and that the "offender continues to pose a threat to society." R.C. 2967.271(C)(1)(a) and (b). Again, the statute is silent on whether the offender will be provided information about the factual basis the DRC intends to rely on to establish either of these necessary elements for rebuttal, and

the statute makes no provision for the offender to be given an opportunity to rebut the DRC's assertions.

{¶ 157} If the DRC determines that the DRC has rebutted the presumption of release pursuant to R.C. 2967.271(C), the DRC "may maintain the offender's incarceration * * * after the expiration of the offender's minimum prison term * * * for an additional period of incarceration determined by the [DRC] and shall not exceed the offender's maximum prison term." R.C. 2967.271(D). There are no guidelines whatsoever concerning how the DRC makes its decisions under subsection (D). Additionally, R.C. 2967.271(D) does not provide for a hearing separate from the rebuttable presumption hearing required under subsection (C).

{¶ 158} R.C. 2967.271(E) does not protect prison inmates' due process rights. Subsection (E) states that the DRC "shall provide notices of hearings to be conducted under division (C) or (D) of this section in the same manner, and to the same persons, as specified in section 2967.12 and Chapter 2930 of the Revised Code with respect to hearings to be conducted regarding the possible release on parole of an inmate."[12] R.C. 2967.12 addresses individuals and entities to whom notice shall be given in the event the adult parole authority recommends a pardon or commutation, or grants parole. R.C. Chapter 2930 outlines victims' rights. Specifically, subsection (E) provides for notice of the Reagan Tokes Law rebuttable presumption hearings

---

[12] A rebuttable presumption hearing is required under the Reagan Tokes Law only under subsection (C). Subsection (D) does not provide for a hearing, other than the potential for subsequent subsection (C) rebuttable presumption hearings should the DRC decide to extend the inmate's stay in prison beyond the presumptive release date after the initial rebuttable presumption hearing.

to be given to the prosecuting attorney from the inmate's case; the judge or presiding judge of the court in which the inmate was indicted; the victims or victims' representatives of the crimes of which the inmate was convicted; and certain law enforcement agencies. Nothing in subsection (E) provides notice of the rebuttable presumption hearing to the inmate.

{¶ 159} In *Wilburn*, this court held that the Reagan Tokes Law provides a "hearing at which an inmate can appear and present statements on his behalf." *Wilburn*, 8th Dist. Cuyahoga No. 109507, 2021-Ohio-578, at ¶ 32, citing *Greenholtz* 442 U.S. at 15, 99 S.Ct. 2100, 60 L.Ed.2d 668. *See also Simmons*, 8th Dist. Cuyahoga No. 109476, 2021-Ohio-939, at ¶ 21. But, as discussed, nothing in R.C. 2967.271(C) or (E) establishes that the inmate can appear and present statements on his or her behalf at the rebuttable presumption hearing.

{¶ 160} While R.C. 2967.271 provides for a rebuttable presumption hearing, nothing in the statute requires that this hearing be meaningful. There is no provision in the Reagan Tokes Law that the inmate be made aware of the evidence the DRC intends to use to rebut the presumption, "be heard in person," be allowed "to present witnesses and documentary evidence," or be allowed "to confront and cross-examine" witnesses. *Morrissey*, 408 U.S. at 489, 92 S.Ct. 2593, 33 L.Ed.2d 484. Nothing in the statute provides that the inmate will receive notice of the allegations with ample time to "give the charged party a chance to marshal the facts in his defense and to clarify what the charges are * * *." *Wolff*, 418 U.S. at 564, 94 S.Ct. 2963, 41 L.Ed.2d 935. Nothing requires the determinations to be made by

independent, neutral, and detached decisionmakers. No provision requires the factfinders to explain their determinations. In other words, the Reagan Tokes Law does not provide the due process safeguards set forth in *Morrissey*, *Wolff*, and their progeny.

{¶ 161} The Reagan Tokes Law, as written, does not afford inmates a meaningful hearing, which is the fundamental element of due process required by the liberty interest the statute itself creates. In other words, without looking at extrinsic facts or speculating about hypothetical or imaginary scenarios, which is not proper in the analysis of a facial challenge to the constitutionality of a statute, the Reagan Tokes Law is incompatible with constitutional due process. I am mindful that the analogy of Reagan Tokes Law proceedings and parole revocation or prison discipline proceedings may not be perfectly on point. Such is the nature of analogies. However, I conclude that the Reagan Tokes Law triggers more than the minimum due process protections. The *Morrissey* and *Wolff* requirements should serve as guidelines for Reagan Tokes Law proceedings. Of particular concern is how these proceedings will impact inmates who suffer from mental-health and substance-abuse issues. But failing to provide an inmate the right to present a defense — any defense at all — flies in the face of well-established due process jurisprudence at its very core.

{¶ 162} The Ohio legislature knows how to include due process safeguards in statutes. For example, in R.C. 2967.28(E)(5)(d), the legislature authorized the DRC to adopt rules in accordance with Chapter 119 of the Revised Code that "[e]stablish

standards to be used by the adult parole authority in imposing further sanctions" for postrelease control violations, "including standards that * * * [e]nsure procedural due process to an alleged violator * * *."  As another example, the legislature expressly specified due process protections in R.C. 2971.04,[13] which addresses parole board termination of its control over certain offenders' service of their prison terms. That statute itself provides "The offender has the right to be present at any hearing held under this section.  At the hearing, the offender and the prosecuting attorney may make a statement and present evidence as to whether the parole board should terminate its control over the offender's service of the prison term * * *."

{¶ 163} I conclude in this dissent that subsections (C) and (D) are unconstitutional.  However, I stop short of delineating the procedural safeguards necessary to align the statute's proceedings with the Fourteenth Amendment to the United States Constitution and Article I, Section 16, of the Ohio Constitution.  *See generally Sandin*, 515 U.S. at 482, 115 S.Ct. 2293, 132 L.Ed.2d 418 (noting the negative effects of involving the "courts in the day-to-day management of prisons, often squandering judicial resources with little offsetting benefit to anyone.  In doing so, it has run counter to the view expressed in several of our cases that federal courts

---

[13] The lead opinion opines that because this dissent finds an express delegation of authority in R.C. 2971.04, "R.C. 2967.271 should also pass constitutional muster * * *."  This is a non sequitur.  R.C. 2967.271 is different from R.C. 2971.04 precisely in that it does not include an express delegation of rulemaking authority.  The lead opinion also claims that "[u]nder R.C. 2967.271(C), the [DRC] undertakes the hearing to decide the release question through its parole board based on evidence presented to the inmate from the prison infraction process."  However, the words "parole"; "board"; "based"; "evidence"; and "presented" are not in R.C. 2967.271(C).  R.C. 2967.271(C) contains no procedural mandates.

ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment"). What process is due is a malleable concept, and one I think better left to the legislature to sort out. Courts cannot simply rewrite a statute to make it constitutional. *Pratte v. Stewart*, 125 Ohio St.3d 473, 2010-Ohio-1860, 929 N.E.2d 415, ¶ 54.

## III. Response to the Lead Opinion

{¶ 164} Finally, a few words in response to the lead opinion. In the case at hand, Delvallie disputes the constitutionality of the Reagan Tokes Law in this facial challenge. When reviewing a facial challenge, courts "must be careful not to exceed the statute's actual language * * *." *Wymsylo*, 132 Ohio St.3d 167, 2012-Ohio-2187, 970 N.E.2d 898, at ¶ 21. This principal is important to bear in mind in this en banc proceeding. While I share the lead opinion's appreciation for a public policy that incentivizes good behavior and rehabilitation of inmates, that laudable goal is not sufficient to save an unconstitutional statute.

### A.    R.C. 2967.271 (C) and (D) — and Not the Entire Reagan Tokes Law — are Unconstitutional

{¶ 165} The lead opinion repeatedly mischaracterizes this dissenting opinion as attempting to declare the entire Reagan Tokes Law unconstitutional and 53 statutory sections unenforceable "with no analysis." This is simply not accurate.

{¶ 166} Rather, this dissent cites the specific offending statutory provisions, concludes that subsections (C) and (D) of R.C. 2967.271 are unconstitutional, and analyzes due process in general, what constitutes a liberty interest, what process is due, and whether the Reagan Tokes Law's procedures for denying inmates their

liberty interest in being released from prison on their presumptive release date satisfy due process requirements.

{¶ 167} A reviewing court need not declare an entire statutory scheme unconstitutional to conclude that a particular statute is unenforceable. A digression to introduce an analogy is apropos at this time. If a car's transmission or engine fails, this car may be undriveable. Does this mean that the entire car is broken? Not necessarily. A faulty engine or transmission, by itself, is nothing more than a faulty engine or transmission. However, this faulty component is integral enough to the whole that its failure may render the car unusable. Just like the statute at issue in the case at hand, the unconstitutionality of R.C. 2967.271(C) and (D), which cannot be severed, render the indefinite sentences imposed under the Reagan Tokes Law "unusable" — not unconstitutional, but inoperable.

{¶ 168} The lead opinion further assumes that because *Sealey* affirmed the trial court's holding that the Reagan Tokes Law is unconstitutional, the *Sealey* panel necessarily did so using the same reasoning that the trial court used. Specifically, the lead opinion states as follows: "While it may have been the panel's intent to only find subsections (C) and (D) of R.C. 2967.271 unconstitutional, the net effect of the panel's ruling affirmed the trial court's holding that the 'Reagan Tokes Law' is unconstitutional in its entirety." *Ante* at ¶ 3. This is simply not accurate. *Sealey's* clear, autonomous, and precise reasoning declared R.C. 2967.271(C) and (D) unconstitutional. It is well-established that "[i]t is the duty of the reviewing court to affirm the judgment if it can be supported on any theory, although a different theory

from that of the trial court." *Newcomb v. Dredge*, 105 Ohio App. 417, 424, 152 N.E.2d 801 (2d Dist.1957). "This is so because reviewing courts affirm and reverse judgments, not the reasons for the judgments." *Geneva v. Fende*, 11th Dist. Ashtabula No. 2009-A-0023, 2009-Ohio-6380, ¶ 33.

### B. No Policy is at Issue Here, and a Policy Does Not Have the Force and Effect of Law

{¶ 169} The lead opinion posits that the Reagan Tokes Law is constitutional because DRC Policy 105-PBD-15 rescues the statute by providing due process protections. This argument fails.

{¶ 170} First, DRC Policy 105-PBD-15 is not being appealed in this case. That policy was not in effect at the time the parties brought this appeal, it was not in effect at the time the parties submitted their briefs, and it was not in effect at the time the parties participated in oral argument in this case. It is not before this court to consider whether the DRC policy provides due process protections that are absent from the statute. *See State v. Tate*, 140 Ohio St.3d 442, 2014-Ohio-3667, 19 N.E.3d 888.

{¶ 171} Second, a policy is not a rule. The lead opinion repeatedly mischaracterizes DRC Policy 105-PBD-15 as an administrative "rule," which has the force of law, when, in fact, it is a policy, which does not have the force of law. Importantly, the legislature did not delegate, or even attempt to delegate, any rulemaking authority in R.C. 2967.271.

{¶ 172} The Ohio Supreme Court has held that an administrative rule "issued pursuant to statutory authority has the force and effect of law * * *." *Kroger Grocery*

*& Baking Co. v. Glander*, 149 Ohio St. 120, 125, 77 N.E.2d 921 (1948). An administrative rule, promulgated pursuant to R.C. Chapter 119, goes through extensive review and comment prior to being afforded the authority of law.

> Administrative rulemaking is subject to the conditions set out in R.C. 119.01 to 119.13. Generally, these conditions require that notice be given of a public hearing to be held on a proposed rule, where persons affected thereby may comment and present evidence pertaining to the unreasonable or unlawful effect of the rule. R.C. 119.03(A). The rule is then reviewed by the Joint Committee on Agency Rule Review, which may, under certain circumstances, recommend that the General Assembly adopt a resolution invalidating the rule. R.C. 119.03(I). Assuming that the rule is not invalidated at this point, it is still subject to invalidation at the next regular session of the General Assembly. R.C. 119.03(I)(2)(b). If the rule is not invalidated at that session, then the agency may issue an order adopting the rule. R.C. 119.03(D).

*Chambers v. St. Mary's School*, 82 Ohio St.3d 563, 567, 697 N.E.2d 198 (1998), fn. 2. *See also* R.C. 111.15.

{¶ 173} An example of a legislative delegation of rulemaking authority can be found in R.C. 2967.15(B), which governs parole revocation hearings:

> Except as otherwise provided in this division, prior to the revocation by the adult parole authority of a person's pardon, parole, or other release and prior to the imposition by the parole board or adult parole authority of a new prison term as a post-release control sanction for a person, the adult parole authority shall grant the person *a hearing in accordance with rules adopted by the department of rehabilitation and correction under Chapter 119. of the Revised Code*.

(Emphasis added.)

{¶ 174} Unlike the parole revocation statute, the Reagan Tokes Law's provisions at R.C. 2967.271 do not contain an R.C. Chapter 119 — or any — express delegation of rulemaking authority.

{¶ 175} Agency policies,[14] on the other hand, do not have the same force and effect as laws. *See Oko v. Mohr*, 11th Dist. Ashtabula No. 2011-A-0045, 2012-Ohio-1450, ¶ 16 ("Relator * * * cites to the [DRC's] "Reception Admission Procedure" as an Administrative Rule. It is not such a rule but instead is a policy issued by the [DRC] pursuant to R.C. 5120.01 * * *"); *State ex rel. Estate of Sziraki v. Admr., Bur. of Workers' Comp.*, 10th Dist. Franklin No. 10AP-267, 2011-Ohio-1486 (noting that a Bureau of Workers' Compensation policy "is not an administrative rule and was not promulgated pursuant to either the BWC's or the commission's rule-making authority. As such, this policy does not have the same effect as law").

{¶ 176} The proposition that not every agency directive has the force and effect of law is further supported by the Ohio Supreme Court's recent decision in *O'Neal v. State*, Slip Opinion No. 2021-Ohio-3663 (Oct. 19, 2021). At issue in *O'Neal* is 01-COM 11, which is "a written execution protocol * * * that sets forth the specific process by which DRC personnel are to carry out death sentences by lethal injection." *Id.* at ¶ 1. The *O'Neal* Court found that, "[i]n adopting 01-COM-11, DRC did not follow Ohio's procedures for formal rulemaking set forth in R.C. 111.15."[15]

---

[14] Executive policies may be made with or without delegation; they may be enforceable or unenforceable; they may be constitutional or unconstitutional. But they never have the force and effect of law. It remains, however, that no policy is being challenged in this en banc proceeding.

[15] "R.C. Chapter 119, the Ohio Administrative Procedure Act, applies to most state administrative agencies, and R.C. 111.15 specifies the rulemaking procedure for most agencies not covered by R.C. Chapter 119." *State ex rel. Ryan v. State Teachers Ret. Syst.*, 71 Ohio St.3d 362, 366, 653 N.E.2d 1122 (1994). The *O'Neal* Court stated that "[w]e will * * * look to our precedents in applying R.C. 119.01(C) to help us construe R.C. 115.15(A)." *O'Neal* at ¶ 26.

"*Id.* at ¶ 4. In *O'Neal,* the Ohio Supreme Court reviewed whether 01-COM-11 is a rule subject to statutory rule-making requirements. *Id.* at ¶ 6-7. Put another way, "the dispositive issue is whether the execution protocol constitutes a 'rule' as defined in R.C. 111.15(A)(1)." *Id.* at ¶ 23.

{¶ 177} The *O'Neal* Court held that "01-COM-11 is neither a rule having general and uniform application nor an internal-management rule and that it is an order dealing with the duties of DRC's employees. Therefore, DRC was not required to file 01-COM-11 pursuant to R.C. 111.15." *Id.* at ¶ 62. Thus, the court, as a matter of law, drew a clear distinction between a rule and something that is not a rule.

{¶ 178} To further explain this distinction, the court continued: "An action that establishes a new policy or standard is a rule under R.C. 119.01(C); one that implements or interprets a pre-existing rule or statute is not." *Id.* at¶ 27.

{¶ 179} Furthermore, the *O'Neal* decision concluded that an agency action is not a rule just because it was adopted under the authority of R.C. 5120.01. "[W]e * * * reject the argument that R.C. 5120.01 requires that all of DRC's duties be carried out pursuant to formally promulgated rules." *Id.* at ¶ 55.

{¶ 180} Nothing in *O'Neal* supports the lead opinion. Nothing in *O'Neal* has any bearing on the constitutionality of R.C. 2967.271(C) or (D) as enacted by the legislature.

{¶ 181} The lead opinion's conclusory statement that "[f]or our purposes, the use of the term 'administrative policy' is synonymous with 'administrative rule'" is simply not an accurate statement of the law. In fact, the lead opinion correctly notes

that "there are different requirements for enactment of rules or policies." The difference is substantive, material, and relevant to the discussion at hand. The policy that the lead opinion desperately clings to is not at issue or being challenged in this case, and it has absolutely no bearing on whether R.C. 2967.271(C) and (D) are constitutional. In fact, any substantive analysis of whether DRC Policy 105-PBD-15 comports with due process safeguards is not ripe for review and is nothing more than an advisory opinion at this point. "It is, of course, well settled that this court will not indulge in advisory opinions." *N. Canton v. Hutchinson*, 75 Ohio St.3d 112, 114, 661 N.E.2d 1000 (1996).

{¶ 182} The lead opinion relies on *Rodriguez v. United States Parole Comm.*, 594 F.2d 170, 173 (7th Cir.1979), which holds as follows: "When Congress has delegated to an agency the authority to make a rule instead of making the rule itself, the resulting administrative rule is an extension of the statute for purposes of the clause." *Id.* at 173. This holding, of course, does not apply to the Reagan Tokes Law because, in relation to R.C. 2967.271(C), the legislature has not delegated rulemaking authority and the DRC has not made a rule.

### C. R.C. 2967.271(C) and (D) Fail to Satisfy the Requirements of Due Process Either Expressly Within the Statute or by Delegation of Rulemaking Authority

{¶ 183} I agree with the lead opinion that the legislature may expressly write constitutional safeguards into a statute, or the legislature may delegate rulemaking authority to an executive agency, who, in turn, must promulgate rules "to safeguard constitutional concerns." *Ante* at ¶ 59. The lead opinion also correctly concludes

that "R.C. 2967.271(C) and (D) do not contain the policies and procedures under which the maximum-term hearings will be conducted." *Ante* at ¶ 68. Furthermore, as the lead opinion aptly points out, "R.C. 2967.271 omits language authorizing [the DRC] to draft rules and procedures for the maximum-term hearings * * *." *Ante* at ¶ 60.

{¶ 184} To put it another way, R.C. 2967.271(C) and (D) provide no due process safeguards and are, as a result, unconstitutional. The Ohio legislature knows how to include due process safeguards in statutes. *See, e.g.*, R.C. 2967.15 (governing parole revocation and expressly delegating Chapter 119 rule making authority to the DRC); R.C. 2971.04 (governing the parole board's control over sexually violent offenders and providing express due process safeguards within the statute). The lead opinion mischaracterizes this dissenting opinion by stating that its

> net effect * * * is a declaration that the Ohio legislature may not delegate authority to the executive agency through separate provisions of the Ohio Revised Code, but must instead provide detailed rules and policies within the statutory section that creates the particular process, otherwise that statutory provision is unconstitutional.

*Ante* at ¶ 65. As explained, that is not the "net effect" of this dissenting opinion, which makes no such "declaration."

{¶ 185} Interestingly, the lead opinion suggests that R.C. 2967.271 passes constitutional muster because other Revised Code sections are also silent on due process issues. For example, according to the lead opinion, R.C. 2971.04 neither provides "the express procedures for conducting a hearing nor an express delegation

of authority for the executive branch to promulgate those policies, rules, or procedures." *Ante* at ¶ 61. This is simply not accurate. Among the procedural safeguards expressly written into R.C. 2971.04 are the following:

> The parole board shall not terminate its control over the offender's service of the prison term unless it finds at a hearing that the offender does not represent a substantial risk of physical harm to others. * * * Prior to determining whether to terminate its control over the offender's service of the prison term, the parole board shall request the department of rehabilitation and correction to prepare pursuant to section 5120.61 of the Revised Code an update of the most recent risk assessment and report relative to the offender. The offender has the right to be present at any hearing held under this section.
>
> At the hearing, the offender and the prosecuting attorney may make a statement and present evidence as to whether the parole board should terminate its control over the offender's service of the prison term. In making its determination as to whether to terminate its control over the offender's service of the prison term, the parole board may follow the standards and guidelines adopted by the department of rehabilitation and correction under section 5120.49 of the Revised Code and shall consider the updated risk assessment and report relating to the offender prepared by the department pursuant to section 5120.61 of the Revised Code in response to the request made under this division and any statements or evidence submitted by the offender or the prosecuting attorney.

{¶ 186} The lead opinion's statement that "R.C. 2971.04 is silent as to any delegation of authority to promulgate rules * * *" *ante* at ¶ 61, is both correct and irrelevant given that the statute itself mandates due process protections required to be afforded to the offender. Delegation is not needed when you do it yourself.

### D. Extending a Prison Term Beyond the Presumptive Release Date Does Not Extend the Prison Term Beyond the Maximum Sentence Imposed

{¶ 187} The lead opinion states that "an overarching issue that appears to permeate every aspect" of a Reagan Tokes constitutionality challenge is "the belief

that the [DRC] 'extends' or 'imposes' a prison term under R.C. 2967.271(C) and (D) beyond the maximum sentence imposed by the sentencing court." *Ante* at ¶ 23. This statement is an overgeneralization. This author concludes that R.C. 2967.271(C) and (D) are unconstitutional, while recognizing that extending a prison term beyond the presumptive release date does not extend the prison term beyond the maximum sentence imposed. These two schools of thought can coexist.

### E. Conclusion

{¶ 188} The protected liberty interest created by Reagan Tokes Law is the expectation of release from prison on the presumptive release date. In other words, the nature of the deprivation at issue is freedom. "Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that [the constitution] protects." *Zadvydas v. Davis*, 533 U.S. 678, 690, 121 S.Ct.2491, 150 L.Ed.2d 653 (2001).

> [I]t is clear that a convict does not lose all his constitutional rights once he enters the prison population; constitutional rights of a fundamental nature, adapted to the context and penologic purposes of the imprisonment, are still available to him. * * * The extension of fundamental fairness to prison inmates is not in any way inconsistent with appropriate penologic considerations; indeed, it may well be that the grant of basic constitutional rights to prisoners will enhance, rather than impede, legitimate penologic ends.

*In re Lamb*, 34 Ohio App.2d 85, 87-88, 296 N.E.2d 280 (8th Dist.1973).

{¶ 189} As written, the Reagan Tokes Law does not satisfy the requirements of due process and, as such, subsections (C) and (D) are unconstitutional.

ANITA LASTER MAYS, J., DISSENTS IN PART AND CONCURS IN PART WITH SEPARATE OPINION:

{¶ 190} I respectfully dissent from the majority opinion's finding that the indefinite sentencing scheme under R.C. 2967.271 of the Reagan Tokes Law is constitutional, but I concur that the question of constitutionality is ripe for review. To that end, the issue has been argued and awaits an opinion is *State v. Maddox*, 160 Ohio St.3d 1505, 2020-Ohio-6913, 159 N.E.3d 1150. The certified question in *Maddox*:

> Is the constitutionality of the provisions of the Reagan Tokes Law, which allow the Department of Rehabilitation and Correctio[n] to administratively extend a criminal defendant's prison term beyond the presumptive minimum term, ripe for review on direct appeal from sentencing, or only after the defendant has served the minimum term and been subject to extension by application of the Act?

*Maddox* at 1151.

{¶ 191} I agree with the argument in *Maddox* that

> [it] makes no sense to "wait and see" if the Tokes law is unconstitutional until after an inmate is held-over because a Byzantine system that postpones adjudication until after someone is physically restrained under an extended sentence results in the worst legal harm — loss of liberty that cannot be retroactively remedied.

Maddox brief, p. 4.

## I. Due Process

{¶ 192} I concur *in toto* with the opinion of the dissent that the Reagan Tokes Law at R.C. 2967.271 violates the right to due process of law as was previously discussed at length by this author of the original opinion in *Delvallie*, 8th Dist. Cuyahoga No. 109315, 2021-Ohio-1809. Additionally advanced by *Delvallie*, I

would also determine that the Reagan Tokes Law violates the Sixth Amendment right to trial by jury and the separation-of-powers doctrine.

## II. Right to Trial by Jury

{¶ 193} The right to trial by jury is protected by the Sixth Amendment of the United States Constitution and Article I, Section 5, of the Ohio Constitution. The Ohio Supreme Court recently reiterated:

> The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury." This entitles criminal defendants "to a jury determination of any fact on which the legislature conditions an increase in their maximum punishment." *Ring* [*v. Arizona*], 536 U.S. [584,] 589, 122 S.Ct. 2428, 153 L.Ed.2d 556 [(2002)]. *See also Hurst* [*v. Florida*, 577] U.S. [92], 136 S.Ct. 616, 619, 193 L.Ed.2d 504 [2016] ("The Sixth Amendment requires a jury, not a judge, to find each fact necessary to impose a sentence of death"). Ohio's death-sentence scheme satisfies this right.

*State v. Mason*, 153 Ohio St.3d 476, 2018-Ohio-1462, 108 N.E.3d 56, ¶ 19.

{¶ 194} The Sixth Amendment applies to both "the factfinding necessary to increase a defendant's sentence by two years" and "the factfinding necessary to put him [or her] to death." *Ring v. Arizona*, 536 U.S. 584, 609. 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002).

{¶ 195} Delvallie relies on *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), that held the Sixth Amendment prohibits a trial judge "from making any finding necessary for the imposition of a particular sentence unless that finding was reflected in the jury's verdict." Appellant's brief, p. 5. The *Blakely* Court explained that the prohibition does not apply solely to sentences that exceed the legislated statutory maximum limit. "[T]he relevant 'statutory maximum' is not

the maximum sentence a judge may impose after finding additional facts." *Id.* at 303-304. It is "the maximum he [or she] may impose without any additional findings." *Id.* at 304. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts "'which the law makes essential to the punishment.'" *Id.*, quoting 1 J. Bishop, *Criminal Procedure* § 87, p 55 2d ed. 1872. Thus, "the judge exceeds his [or her] proper authority." *Id.* at 303-304.

{¶ 196} In the instant case, Delvallie's presumptive minimum will be increase by facts not determined by a jury but in fact by the executive branch. In *Alleyne v. United States*, 570 U.S. at 103, 133 S.Ct. 2151, 186 L.Ed.2d 314, the defendant was convicted of robbery with a firearm specification. The minimum mandatory term for the firearm increased by two years if it was demonstrated that Alleyne brandished the firearm during the act.

{¶ 197} Renowned legal scholar Erwin Chemerinsky, currently Dean of the University of California at Berkeley School of Law, sagely suggests that "*Apprendi* and its progeny should be seen as establishing a simple proposition: under the Sixth Amendment, it is wrong to convict a person of one crime and sentence that person for another." Erwin Chemerinsky, *Making Sense of Apprendi and its Progeny*, *McGeorge Law Review*, Vol. 37, p. 532 (2006). That is precisely the impact of the Reagan Tokes Law.

{¶ 198} I find that the Reagan Tokes Law poses a wholly distinguishable situation. "[A]ny increase in a defendant's authorized punishment contingent on the finding of a fact" requires a jury and proof beyond a reasonable doubt "no

matter" what the government chooses to call the exercise. *United States v. Haymond*, 588 U.S.____, 139 S.Ct. 2369, 2379, 204 L.Ed.2d 897 (2019), quoting *Ring*, 536 U. S., at 602, 122 S.Ct. 2428, 153 L.Ed.2d 556. "Any fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt." *Alleyne*, 570 U.S. 99, 109 S.Ct. 2151, 186 L.Ed.2d 314. The "fact" in this case would be whether, after Delvallie is sentenced and incarcerated, he allegedly violates an ODRC rule before his presumptive minimum term expires.

{¶ 199} The Reagan Tokes Law expressly provides for a minimum term that is presumed to be sufficient punishment for the crime committed. An offender will be sentenced to serve additional time based on unknown future violations of ODRC rules, acts that have yet to be committed, to be solely adjudicated by the ODRC. The facts are not submitted to a jury and determined beyond a reasonable doubt.

{¶ 200} I would determine that the Reagan Tokes Law violates the Sixth Amendment right to trial by jury. The United States Supreme Court made it clear that a Sixth Amendment violation occurs when the facts considered in enhancing the minimum or maximum sentence have not been considered by the jury. The presumed minimum sentence is enhanced under Reagan Tokes.

{¶ 201} I am reminded that "the Sixth Amendment by its terms is not a limitation on judicial power, but a reservation of jury power." *Blakely,* 542 U.S. 296, 308, 124 S.Ct. 2531, 159 L.Ed.2d 403. "It limits judicial power only to the extent that the claimed judicial power infringes on the province of the jury." *Id.* I am not

presented here with judicial factfinding based on sentencing factors as is permitted where a sentence is rendered within an authorized range as offered by the state, citing *State v. Bowers*, 163 Ohio St.3d 28, 2020-Ohio-5167, 167 N.E.3d 947, ¶ 13.

{¶ 202} "[T]he relevant inquiry is one not of form, but of effect — does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?" (Fn. omitted.) *Apprendi*, at 530 U.S. at 476, 494, 120 S.Ct. 2348, 147 L.Ed.2d 435. Clearly, it does. It also bears repeating that consideration of sentencing factors allows the trial court to consider factors to determine the term of punishment for acts that were committed and convicted *prior* to sentencing. That is not the case under the Reagan Tokes Law. Instead, the role of the jury is usurped not by the trial court, but by the ODRC based on conduct wholly unrelated to Delvallie's convictions and prophetic punishment.

## III. Separation of Powers

{¶ 203} I would also find that the Reagan Tokes Law constitutes the legislative delegation of judicial powers to the executive branch of government. The Ohio Supreme Court explained:

> "The people possessing all governmental power, adopted constitutions completely distributing it to appropriate departments." *Hale v. State*, 55 Ohio St. 210, 214, 45 N.E. 199, 200 (1896). They vested the legislative power of the state in the General Assembly (Section 1, Article II, Ohio Constitution), the executive power in the Governor (Section 5, Article III, Ohio Constitution), and the judicial power in the courts (Section 1, Article IV, Ohio Constitution). They also specified that "the general assembly shall [not] * * * exercise any judicial power, not herein expressly conferred." Section 32, Article II, Ohio Constitution.

*State ex rel. Ohio Academy of Trial Lawyers v. Sheward*, 86 Ohio St.3d 451, 462, 715 N.E.2d 1062 (1999).

{¶ 204} The courts "'possess all powers necessary to secure and safeguard the free and untrammeled exercise of their judicial functions and cannot be directed, controlled or impeded therein by other branches of the government.'" *State v. Thompson*, 92 Ohio St.3d 584, 586, 752 N.E.2d 276 (2001), quoting *State ex rel. Johnston v. Taulbee,* 66 Ohio St. 2d 417, 423 N.E.2d 80 (1981), paragraph two of the syllabus, approving and following S*tate ex rel. Foster v. Lucas Cty. Bd. of Commrs.*, 16 Ohio St.2d 89, 242 N.E.2d 884 (1968), paragraph two of the syllabus. "'It is indisputable that it is a judicial function to hear and determine a controversy between adverse parties, to ascertain the facts, and, applying the law to the facts, to render a final judgment.'" *Id.*, quoting *Fairview v. Giffee*, 73 Ohio St. 183, 190, 76 N.E. 865 (1905).

{¶ 205} The Ohio Supreme Court, in *State ex rel. Bray v. Russell*, 89 Ohio St.3d 132, 729 N.E.2d 359 (2000), declared former R.C. 2967.11, known as the "bad-time statute" unconstitutional. The statute allowed the parole board to punish a rule violation by extending the stated prison term. Pertinent here, the court explained that "[p]rison discipline is an exercise of executive power and nothing in this opinion should be interpreted to suggest otherwise." *Id.* at 136. "However, trying, convicting, and sentencing inmates for crimes committed while in prison is not an exercise of executive power." *Id.*

{¶ 206} Delvallie contends that both the bad-time provision addressed in *Bray* and the Reagan Tokes Law "provide for the executive branch prison system to tell an inmate that the sentence imposed by the judge is not enough and that the inmate will be serving a longer sentence as a result of an executive agency's determination." Appellant's brief, p. 9. The state counters that *Woods v. Telb*, 89 Ohio St.3d 504, 733 N.E.2d 1103 (2000), and *State ex rel. Atty. Gen. v. Peters*, 43 Ohio St. 629, 647, 4 N.E. 81 (1885), govern.

{¶ 207} *Woods* involved a challenge to former R.C. 2967.28 and the ODRC's management of postrelease-control ("PRC") violations. The court determined the PRC statute was constitutional and did not violate the separation of powers or due process clauses of the federal and state constitutions. *Woods* distinguished PRC from bad time on the ground that PRC is part of the "original judicially imposed sentence." *Id.* at 512. The court explained that PRC "sanctions are sanctions aimed at behavior modification in the attempt to reintegrate the offender safely into the community, not mere punishment for an additional crime, as in bad time." *Id.*

{¶ 208} Unlike *Bray* and the Reagan Tokes Law, PRC is not imposed based on behavior that took place during the offender's incarceration. I do not find that Delvallie's reliance on *Bray* is misplaced. In *Bray*, the prisoners were sentenced to additional terms of incarceration for acts committed in prison during their term of incarceration.

{¶ 209} Under the Reagan Tokes Law, a defendant is sentenced to a "minimum prison term" that the court may choose from the listed term choices in the statute:

> (1) "Offender's minimum prison term" means the minimum prison term imposed on an offender under a non-life felony indefinite prison term, diminished as provided in section 2967.191 or 2967.193 of the Revised Code or in any other provision of the Revised Code, other than division (F) of this section, that provides for diminution or reduction of an offender's sentence.

R.C. 2967.271(A)(1). R.C. 2967.271(B) adds "there shall be a presumption" that the offender will be released "on the expiration of the offender's minimum prison term or on the offender's presumptive earned early release date, whichever is earlier." *Id.*

{¶ 210} The law also includes an early release mechanism at R.C. 2967.271(F). An offender may be granted early release that shall be for five to fifteen percent of the offender's presumptive minimum term "determined in accordance with rules adopted by the department under division (F)(7) of this section." R.C. 2967.271(F)(1)(b). Early release is labeled the "[o]ffender's presumptive earned early release date." R.C. 2967.271(A)(2).

{¶ 211} The ODRC develops the rules for what is required for a reduction recommendation, including offense levels. ODRC assembles supporting information and makes a recommendation to the sentencing court to receive approval for early release. A court hearing is conducted, and the prosecutor and victim, if any, may present information. Documents and reports may also be

submitted. If the court determines that the early release presumption has not been rebutted by the presence of the cited factors, the reduction will be granted.

{¶ 212} Under R.C. 2967.271(F)(5), the court must provide the offender with notice of approval or denial of early release to the ODRC within 60 days. If the court denies the reduction, "[t]he court shall specify in the notification the reason or reasons for which it found that the presumption was rebutted and disapproved the recommended reduction." R.C. 2967.271(F)(5). Notably, the statute does not provide for notice to the offender, participation by the offender, submission of information by the offender, or appeal of the decision.

{¶ 213} The Reagan Tokes Law specifies that the ODRC "shall" release the offender on the presumptive release date unless ODRC unilaterally determines that the offender is guilty of committing one of the acts cited in R.C. 2967.271(B) during his or her incarceration. Clearly, the presumptive minimum term is deemed to be punishment commensurate with the crime committed. The sentencing court, based on the facts underlying the convictions that were authorized by the jury within the limits set forth by the legislature, imposed the presumed minimum date.

{¶ 214} R.C. 2967.271(C) outlines the ODRC's minimum-sentence-presumption-rebuttal process and includes an overview of the broad range of behaviors that may be employed to rebut an offender's presumptive release date. Under R.C. 2967.271(D), the ODRC promulgates the rules, has unfettered discretion to determine what charges to initiate against the offender, investigates the charges, serves as the adjudicator and factfinder and determines how far beyond the

presumed release date the offender shall remain in prison. The ODRC will set a reconsideration date for release and this process may occur multiple times but may not exceed the maximum sentence.

{¶ 215} The R.C. 2971.271(F) early release provision is based on factors similar to those employed by the ODRC to rebut the presumptive minimum term release. This bolsters the conclusion proffered by Reagan Tokes Law opponents that the maximum term is a sanction for acts that the ODRC determines violate the rules and regulations of the institution or other illegal acts.

{¶ 216} As stated in *Bray,* "[p]rison discipline is an exercise of executive power and nothing in this opinion should be interpreted to suggest otherwise." *Bray*, 89 Ohio St.3d at 136, 729 N.E.2d 359. "[T]rying, convicting, and sentencing inmates for crimes committed while in prison is not an exercise of executive power." *Bray* at 136. Imposition of the rather elaborate protocol under the Reagan Tokes Law doesnot alter the fact that the ODRC executive branch is "trying, convicting, and sentencing inmates for crimes committed while in prison." *Id.*

{¶ 217} "The reason the legislative, executive, and judicial powers are separate and balanced is to protect the people, not to protect the various branches of government." *Bray* at 135.

{¶ 218} Recently recognized in *State v. Hursey*, Franklin C.P. No. 20 CR 004459, 2021 Ohio Misc. LEXIS 101 (Aug. 6, 2021), "[t]he separation of powers violation raised by S.B. 201's indeterminate sentencing scheme is not prospectively cured by the court acknowledging its mechanics at sentencing." *Hursey* at ¶ 11.

*Hursey* observed that courts that hold the separation-of-powers doctrine is not violated "appear to be predicating that conclusion by analogy to the somewhat different setting of post-release control, and the sentencing colloquy that trial courts caution defendants about PRC violations." *Id.* at ¶ 12.

{¶ 219} The court explained the salient fallacy of the position:

That analogy from a different context is inapposite for several reasons. As an initial matter, when a defendant commits a new crime while on post release control, that new crime is prosecuted in the ordinary course, adjudicated by judge and jury, and then sentenced as a function of the court's core judicial function. By contrast, when a defendant serving an indeterminate sentence under [the Reagan Tokes Law] is accused of committing a new crime while in prison, every aspect of the resulting prosecution, adjudication, and sentencing can remain with ODRC, resulting in years of new incarceration for a wholly new crime, imposed by jailer without resort to judge.

*Hursey* at ¶ 12.

{¶ 220} In addition, the *Hursey* court recognized that:

the prophylactic caution that the sentencing court provides on the front end about [the Reagan Tokes Law's] indeterminate sentencing mechanism in no way meaningfully involves a judge in the eventual subsequent imposition of a longer-than-minimum sentence. To begin with, the Court exercises no discretion about any part of the initial sentence aside from setting that original minimum sentence. The maximum sentence the court recites is determined solely as a function of mathematics, and under the current law, the court has no discretion whether any part of that longer sentence might be imposed or avoided, in whole or in part, on the facts before it at sentencing of the original crime. Nor, obviously, is the Court able to give any meaningful consideration to whatever additional alleged violations or crimes might someday be used by the executive to add years of additional sentencing later on facts that have not yet transpired. All the Court is doing in that colloquy is acknowledging that under [the Reagan Tokes Law], some part of the executive branch might unilaterally intrude into a core judicial function on facts not yet known, and not then subject to judicial review.

*Hursey*, Franklin C.P. No. 20 CR 004459, 2021 Ohio Misc. LEXIS 101, at ¶ 12-13.

{¶ 221} "[T]he Court is merely apprising the defendant that under S.B. 201, a Separation of Powers violation may someday occur for any alleged violation or crime to which the Defendant is subsequently accused while incarcerated." *Hursey* at ¶ 13. "Nothing about such a notice could possibly cure the violation when it later happens." *Id.* at ¶ 14.

{¶ 222} I find that the Reagan Tokes Law violates the separation-of-powers doctrine.